**YAMAHA MOTOR CORPORATION, U.S.A., Appellant,**

v.

**Tony RINEY; Steve Landers; Emmett Jones; Jack Caldwell; William Gandy; Leah Leonard, Appellees,**

**Cycle Center, Inc., Intervenor.**

**No. 93–2197.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1993.

Decided April 7, 1994.

Rehearing Denied May 6, 1994.

Marshall S. Ney, Little Rock, AR, argued (Bryon Freeland, on the brief), for appellant.

Dinah M. Dale, Asst. Atty. Gen., Little Rock, AR, argued (Thomas S. Gay, Sr. Asst. Atty. Gen., on the brief), for appellees.

Before MAGILL and BEAM, Circuit Judges, and VAN SICKLE,* Senior District Judge.

MAGILL, Circuit Judge.

The Yamaha Motor Corporation (Yamaha) appeals the district court's order abstaining from, and dismissing without prejudice, Yamaha's 42 U.S.C. § 1983 claim against six members of the Arkansas Motor Vehicle Commission (the Commission). Because we find that the district court erred when it abstained from exercising its jurisdiction over this action, we reverse and remand to the district court for further proceedings.

## I. BACKGROUND

In 1986, Cycle Center, Inc., (Cycle Center) entered into a dealer agreement (the Agreement) with Yamaha. That Agreement, which furnished the terms of Yamaha's reimbursement obligation to Cycle Center for warranty work, provided the catalyst for this action. In 1992, Cycle Center complained to the

* THE HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the Dis-    trict of North Dakota, sitting by designation.

Commission that Yamaha's reimbursement terms, memorialized in the Agreement, violated the provisions of the Arkansas Motor Vehicle Commission Act[1] (the Act). Following a hearing, the Commission, voting six to two, found that Yamaha failed to comply with the Act. Yamaha then filed suit in federal district court, contending that the Commission's vote violated its constitutional rights and requested that the district court grant injunctive and declaratory relief.

Under the terms of the Agreement, Cycle Center was entitled to either ten or fifteen percent over dealer cost for parts replaced pursuant to the warranty policy. The Act, originally passed in 1975,[2] was amended in 1991,[3] adding the emphasized language.

> On satisfactory proof that any manufacturer ... has unfairly and without due regard to the equities of the parties or to the detriment of the public welfare failed to properly fulfill any warranty agreement or to adequately and fairly compensate any of its motor vehicle dealers for labor, parts, *compensation for parts for two wheeled vehicles must be at the manufacturer's suggested retail price,* or incidental expenses incurred by the dealer with regard to factory warranty agreements performed by the dealer.

Ark.Code Ann. § 23–112–308(a)(10) (emphasis added).

The language emphasized above formed the basis for Cycle Center's complaint to the Commission. Cycle Center argued before the Commission that Yamaha had violated the terms of § 23–112–308(a)(10) by compensating it at less than the manufacturer's suggested retail price (MSRP). Yamaha contended that the Act's 1991 amendment, requiring that warranty parts be compensated at the MSRP, did not apply to its relation-

ship with Cycle Center because the parties had a preexisting contractual agreement. Citing *Chrysler Motors Corp. v. Thomas Auto. Co.*[4] for the premise that the Act was not to be applied retroactively, 939 F.2d 538, 540 (8th Cir.1991), Yamaha argued to the Commission that the only issue in contention was legal and the legal issue—application of the Act to a preexisting contract—had been judicially resolved.

Cycle Center contended at the July 29, 1992 hearing that the Agreement had been modified after 1991 and hence, Yamaha must comply with the Act. Essentially, Cycle Center argued that the annual updated price lists distributed by Yamaha to its dealers comprised a yearly modification of its Agreement with Yamaha.

The Commission's counsel, senior assistant attorney general Thomas Gay, discussing the retroactivity of a law, stated, "[t]he test is what the law says. If there is some ambiguity in what the law says, then you determine what the legislature's intent was in construing and interpreting that particular statute." Appellant's App. at 360. Attorney Gay also counseled that,

> in Arkansas, statutes are presumed to apply prospectively only, from the date they are enacted forward, not retroactively. And to have a statute apply retroactively, that meaning going back and apply [sic] to a contract that already exists at the time the law takes place, takes effect, there has to be some language in the statute itself to show that that's what the legislature intended.

*Id.* at 361.[5]

Commissioner Jones, President of the Arkansas Motorcycle Dealer's Association and a Harley Davidson dealer, advocated applying the 1991 amendment to Yamaha. He stated:

---

1. Ark.Code Ann. § 23–112–101 to –707 (Michie 1992).

2. 1975 Ark. Acts No. 388.

3. Ark.Code Ann. § 23–112–308 (1991 Ark.Acts No. 411, § 1).

4. *Chrysler* examined the application of the Act to the terms of a dealer agreement which was entered into in 1969. 939 F.2d at 539. In *Chrysler,* relying upon unequivocal state law, *id.* at

540, we found that the Act does not apply retroactively and hence, its provisions do not cover agreements entered into before its effective date, *id.*

5. Gay added in reference to the retroactive effect of the Act, "[i]f we look at the Act that was passed in '91 ... trying to find any language in that Act that would evidence an intent to apply it retroactively, I do not see it." *Id.* at 363.

Where this winds up in court as far as somebody with a higher pay rate than I, somebody with a black robe on to decide what is amended and what is not amended, the law is very clear as passed by the legislature that says retail on parts. So, if it's something that pertained to law, we are not lawyers, that's for lawyers to argue, for the court to decide what, in fact, is correct.

*Id.* at 365–66. After further discussion, primarily led by Commissioner Jones, Commissioner Whitson [6] stated, "I think we would be remiss as a Commission to go against our legal counsel in what we see in front of us that the law was not written with retroactive language." *Id.* at 369.

The Commission appeared to understand that in order to apply the Act retroactively, it must find that the Agreement had been substantially changed after the 1991 amendment. *Cf. Woodhaven Homes v. Kennedy Sheet Metal,* 304 Ark. 415, 803 S.W.2d 508, 510 (1991) ("[A] statute will not be given a retroactive application when it takes away a vested right unless such be the 'unequivocal and inflexible import of the terms and the manifest intention of the legislature.' ") (citation omitted). Commissioner Jones, however, encouraged abdication of that responsibility. He stated, "there is a possibility that the contracts ... has [sic] been amended. We don't know that. We can't make that judgment here, because this is not a court of law." Appellant's App. at 374. Attorney Gay corrected Commissioner Jones, stating, "[t]he facts as presented in this case are for you to decide subject to appeal by the court." *Id.* "The issue is for the Commission to decide whether these various amendments change this contract so that there is a new underlying agreement." *Id.* at 375. Nevertheless, without deciding whether the Agreement had been modified after the 1991 amendment was added, six of the eight Commissioners decided that Yamaha had violated § 23–112–308. While discussing the appropriate penalty to be imposed upon Yamaha, Commissioner Jones made a motion to "[s]uspend [Yamaha] from the state of Arkansas." *Id.* at 381. That motion died due to lack of a second vote, and instead, the Commission voted to fine Yamaha pending compliance with the Act.

On September 8, 1992, Yamaha filed suit in federal district court, naming the six Commissioners who determined that Yamaha had violated the Act, and requesting the court to grant either a temporary restraining order, preliminary injunction, or a permanent injunction preventing entry of the Commission's Order to fine Yamaha (the Order). On September 16, 1992, the Commission held a public meeting allowing argument regarding the Commission's Order. At that time, Cycle Center, now represented by Stephen Bilheimer,[7] Commissioner Jones' nephew, and Yamaha both appeared before the Commission arguing the retroactivity issue once again. During that meeting, the Commission voted to memorialize its Order from July 29, 1992.[8]

Sometime between the July 29, 1992 hearing and the September 16, 1992 meeting, a group of motorcycle dealers, including Commissioner Jones, met to discuss the implications of the Cycle Center–Yamaha dispute. *Id.* at 422. These dealers ultimately decided to aid Cycle Center financially in its legal dispute. *Id.* at 418. Although Commissioner Jones maintains that he did not financially contribute to the legal fund, in his capacity as the President of the Arkansas Motorcycle Dealer's Association, he did serve as a conduit for the accumulated monies. *Id.* at 416–19. After collecting monies for Cycle Center's [9] legal fund, Commissioner Jones signed the legal retainer checks for Bilheimer in his

---

6. Commissioner Whitson was one of the two Commissioners who voted against fining Yamaha.

7. Bilheimer first learned about the Cycle Center–Yamaha case from Commissioner Jones, who suggested that the case might be something Bilheimer was interested in. Appellant's App. at 419.

8. Although this vote apparently took place, the Order was not entered until July 26, 1993.

9. Cycle Center intervened in this action on September 25, 1992.

capacity as President of the Arkansas Motorcycle Dealer's Association. *Id.* at 414–15.

The district court set trial for May 10, 1993; however, on May 3, 1993, the district court entered an order abstaining from, and dismissing without prejudice, this action. The district court found that abstention was warranted by *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). After considering *Middlesex*'s three-factor test enumerating the prerequisites for abstention, the district court found that there was an ongoing state proceeding, an important state interest, the ability to raise constitutional issues in the state forum, and no bad faith or bias on the part of the defendants. Yamaha timely appealed.

## II. DISCUSSION

■ A federal court's obligation to adjudicate claims within its jurisdiction is "virtually unflagging." *Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988). Nevertheless, there is a class of cases in which it is typical, as opposed to exceptional, to withhold the authorized equitable relief from a claimant because of undue interference with state proceedings. *Younger v. Harris,* 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). *Younger* abstention applies to those cases where because of notions of comity and federalism, a federal court will abstain from exercising its jurisdiction over an action for injunctive relief. *Id.* at 43–44, 91 S.Ct. at 750. Here, the district court abstained based upon *Middlesex,* a Supreme Court case applying the *Younger* doctrine to civil administrative proceedings. *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521. Because we find that a necessary predicate for *Younger* abstention was absent from this case, we reverse and remand to the district court for further proceedings.

■ In *Younger,* the Supreme Court, articulating a "sensitivity to the legitimate interests of both State and National Governments," 401 U.S. at 44, 91 S.Ct. at 750, narrowly confined the availability of injunctive relief against ongoing state proceedings, *id.* at 53, 91 S.Ct. at 754. Hence, when a state makes a good-faith attempt to enforce its laws and there is no "showing of bad faith, harassment, or any other unusual circumstance," *id.* at 54, 91 S.Ct. at 755, a federal court should abstain from exercising its jurisdiction over the action, *id.* As long as there is no "showing of bad faith, harassment, or any other unusual circumstance," *id.,* these principles require that a federal court abstain if (1) there is an ongoing state judicial proceeding, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521.

■ A "necessary predicate for a *Younger* dismissal ... is, 'the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved.'" *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 594, 95 S.Ct. 1200, 1203, 43 L.Ed.2d 482 (1975) (quoting *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973)). This requirement for *Younger* abstention, articulated in both *Huffman* and *Gibson,* is a reiteration of the third *Middlesex* requirement.[10] Thus, *Huffman* and *Gibson* explain that a district court may not abstain from an exercise of its jurisdiction when the parties lack a competent state tribunal to decide the issues.

■ We hold that the district court's finding that there was no evidence of bias in the state proceeding is clearly erroneous. The district court erred when it dismissed this action pursuant to *Younger* abstention because the state proceeding was before an

---

**10.** There is some dispute in the case law whether the absence of a competent tribunal implicates the third prong of the *Middlesex* test or whether the absence of such a tribunal is an extraordinary circumstance preventing abstention. *See Partington v. Gedan,* 880 F.2d 116, 125 n. 3 (9th Cir.1989), *cert. granted,* 497 U.S. 1020, 110 S.Ct. 3265, 111 L.Ed.2d 776 (opinion vacated on other grounds), 914 F.2d 1349 (9th Cir.1990) (reaffirm-ing and adopting earlier decision), 923 F.2d 686 (9th Cir.1991) (vacating in part on other grounds). There is no dispute, however, that such an incompetent tribunal renders *Younger* abstention inappropriate. *Id.* We agree with the analysis in *Partington;* that is, an incompetent tribunal affects the plaintiff's opportunity to litigate federal constitutional claims before a state tribunal. *See id.*

incompetent tribunal. Adjudication by an incompetent state tribunal precludes a federal court from abstaining on *Younger* grounds.[11] *Gibson*, 411 U.S. at 577, 93 S.Ct. at 1697. "Nor ... would a different result be required simply because judicial review, *de novo* or otherwise, would be forthcoming at the conclusion of the administrative proceedings." *Id.*

We find there was ample evidence of bias on the part of Commissioner Jones, and this bias rendered the Commission incompetent to decide the issues before it. *See Hicks v. City of Watonga*, 942 F.2d 737, 748 (10th Cir.) ("Litigants are entitled to an impartial tribunal whether it consists of one man or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured.") (citation and internal quotes omitted); *see also Antoniu v. Securities & Exch. Comm'n*, 877 F.2d 721, 726 (8th Cir.1989), *cert. denied*, 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990).

■■■ An adjudicator is presumed to be unbiased; to overcome that presumption, a litigant must make a "showing of conflict of interest or some other specific reason for disqualification." *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 1670, 72 L.Ed.2d 1 (1982). An indirect financial interest in the claim raises a question of impartiality. *Nissan Motor Corp. v. Royal Nissan, Inc.*, 757 F.Supp. 736, 740 (E.D.La. 1991). Bias can be shown by a finding that the adjudicator prejudged the issues or had a pecuniary interest in the subject of the action. *Gibson*, 411 U.S. at 578, 93 S.Ct. at 1697. In general, the test is whether the adjudicator's situation is one "which might lead him not to hold the balance [between the parties] nice, clear and true." *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927); *accord Ward v. Village of Monroeville*, 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972).

Commissioner Jones' presence on this tribunal rendered it incompetent to decide the issues before it. *See Hicks*, 942 F.2d at 737. Jones' bias is exhibited not by one, but by the sum total of his relationships "lead[ing]

him not to hold the balance [between the parties] nice, clear and true," *Tumey*, 273 U.S. at 532, 47 S.Ct. at 444. Jones, as a Harley Davidson dealer, had a pecuniary interest in eradicating Yamaha from the State of Arkansas. *See supra* p. 796. There was also ample evidence in the record that Jones had abdicated his role as an adjudicator and had prejudged the issues before him. *See supra* p. 795–96 ("So, if it's something that pertained to law, we are not lawyers, that's for lawyers to argue, for the court to decide what, in fact, is correct."); *accord supra* p. 796 ("[T]here is a possibility that the contracts ... has [sic] been amended. We don't know that. We can't make that judgment here, because this is not a court of law.").

Jones had conflicting interests. For example, he suggested that Cycle Center obtain an attorney and then proceeded to suggest to his nephew, attorney Stephen Bilheimer, that he contact Cycle Center as a potential client. Jones also participated in the meeting in which the motorcycle dealers discussed the Yamaha–Cycle Center dispute, and he acted as a conduit for Cycle Center's legal funds. We find that these facts taken together caused Jones to be incompetent to have rendered an opinion and voted on the Cycle Center complaint. *See Hicks*, 942 F.2d at 748.

Because Yamaha did not receive a hearing before a competent tribunal in the state proceedings, we hold that Yamaha lacked *Younger*'s necessary opportunity to raise constitutional challenges in the state proceeding. As a result, the district court lacked the discretion to abstain from this action.

## III. CONCLUSION

The district court erred when it abstained from exercising its jurisdiction over this action because the state administrative proceeding lacked a necessary predicate for *Younger* abstention. Accordingly, we reverse and remand for further proceedings.

---

11. Because our decision rests on the absence of the third prong for *Middlesex*, or *Younger*, abstention, we find it unnecessary to decide whether the Commission hearing constituted an ongoing state proceeding implicating important state interests. *See supra* p. 797.