896 F.Supp. 691 (1995)
JAGUAR CARS, Plaintiff,
v.
Ray COTTRELL, et al., Defendants.
Civ. A. No. 94-78.
United States District Court, E.D. Kentucky.
August 4, 1995.
*692 Barbara B. Edelman, Janet M. Graham, Wyatt, Tarrant & Combs, Lexington, KY, Carl J. Chiappa, Townley & Updike, New York City, for plaintiff.
Greg E. Mitchell, Shannon Upton Johnson, Frost & Jacobs, Lexington, KY, Dandridge F. Walton, David H. Vance, Day, Smith, Walton & Durham, Frankfort, KY, for defendants.
Richard A. Getty, Gregory A. Keyser, Bowles, Rice, McDavid, Graff, Love & Getty, Lexington, KY, for intervenor defendant.

MEMORANDUM OPINION AND ORDER
HOOD, District Judge.
This matter is before the Court upon motion by the plaintiff, Jaguar Cars, [Jaguar] for preliminary injunction, [Record No. 2] and for leave to supplement the record with newly discovered evidence, [Record No. 36], and by the defendants, referred to herein as the Commission, to dismiss. [Record No. 9]. Being fully briefed, this matter is ripe for decision.
As the Court did not consider the instant information submitted by Jaguar in rendering its order dated July 19, 1995, the Court must re-visit this matter once again. Having carefully reviewed the entire record, including the information regarding the Commission's *693 acting counsel, Dandridge F. Walton [Walton] and David Vance [Vance], the Court must address both Jaguar's motion for preliminary injunction as well as the Commission's motion to dismiss premised upon the mandatory abstention doctrine established in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

FACTUAL BACKGROUND
On April 17, 1995, the Court heard the parties' arguments on Jaguar's motion for preliminary injunction. The Court agreed that the "make-up" of the Commission rendered it biased for the purposes of hearing disputes between car dealers and manufacturers. Thus, the Court ordered that Jaguar move the Commission to recuse its new car dealer-members. Before Jaguar could make such a motion, the Commission voluntarily recused these members. Jaguar objected to the act, requesting in essence, that it be given an opportunity to move for the recusal of other Commission members it considered biased. The Court granted Jaguar that opportunity.
During this time Jaguar obtained newly discovered information regarding the used car dealer members, as well as the Commission's attorneys. This information was considered in as much as it was given in Jaguar's notice of the disposition of its motion for recusal before the Commission. The entirety of the information was not brought to the Court's attention, however, until a complete review of the record reveled the substance of Jaguar's motion to supplement the record.
The Court does not intend to flush out each of the parties' arguments. The law is clear on the matter so that an in depth discussion of the parties' interpretation of the term "bias" is not necessary.

DISCUSSION

I. MOTION FOR PRELIMINARY INJUNCTION.
Before an injunction may be issued, the Court must ask: 1) whether the likelihood of success on the merits is substantial, 2) whether irreparable injury will be incurred in the absence of an injunction, 3) whether an injunction will not cause harm to others, and 4) whether an injunction will serve public interest. G & V Lounge v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1076 (6th Cir.1994). These considerations "are factors to be balanced, not pre-requisites that must be met." In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985). Moreover, where a movant can establish irreparable injury which decidedly outweighs the potential harm to the non-movant, an injunction may issue "if the merits present a sufficiently serious question to justify further investigation." Id. at 1230.

A. SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS
The issue before the Court is whether the Commission's interest in staying a termination of a new car franchise instituted by a manufacturer, renders it biased so that it cannot act as an impartial tribunal. It is well established that "a fair trial in a fair tribunal is a basic requirement of due process.'" Withrow v. Larkin, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975) (quoting In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)). This due process requirement applies to administrative agencies acting in an adjudicative capacity. Gibson v. Berryhill, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973).
The Supreme Court has further defined "a fair tribunal" as a "neutrality requirement" that "has been jealously guarded by the Court." See Mathews v. Eldridge, 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976) and Marshall v. Jerrico, Inc., 446 U.S. 238, 241, 100 S.Ct. 1610, 1612, 64 L.Ed.2d 182 (1980). Accordingly, a "biased decisionmaker is constitutionally unacceptable." Withrow v. Larkin, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).
In the event the adjudicator in a case, civil or criminal, has a pecuniary interest in the outcome, "experience teaches that the probability of actual bias ... is too high to be constitutionally tolerable." Id. at 46, 95 S.Ct. at 1464; see also, Gibson, 411 U.S. at 579, 93 S.Ct. at 1698; Ward v. Village of Monroeville, *694 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); and Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). Thus, the Supreme Court has consistently reasoned that a pecuniary stake or interest renders the adjudicator unconstitutionally biased.
It is undisputed that the Commission's new car dealer members have a pecuniary stake in the instant matter as they would clearly benefit from the ability to stay any termination of a new car franchise at will. In the event they are stripped of this authority, they too would be susceptible to termination, directly affecting their very livelihoods. As they have been recused, further discussion regarding these members is unnecessary. Moreover, used car dealer members Anderson and Madon recused themselves from hearing the instant matter on July 26, and July 27, 1995, respectively. Accordingly, their presence on the Commission need not be considered.
The other two used car dealer members arguably have pecuniary interests in the outcome of this matter. Obviously, used car dealers frequently deal with new car dealers in obtaining their inventory. Moreover, in many instances used car dealerships have agreements with new car dealers for service on their vehicles. Moreover, and notably, these two dealers are conspicuously "standing alone" against the six car dealer members who have a direct interest in maintaining stability among the new car dealer community.
The remaining members of the Commission, whose partiality has not been directly challenged, include a wholesale dealer member, a consumer member, and the Commissioner of the Department of Vehicle Regulation. However, wholesale dealers generally operate either by purchasing vehicles from fleet companies (Avis, Hertz, etc.) and reselling those to new and/or used car dealers, or by purchasing vehicles from new car sales dealers who have an overstock of used cars. Thus, as the very existence of the wholesale car sales industry is inextricably interwoven into the health and vitality of the new car sales industry, it may readily be said that the wholesale dealer member has a direct interest in the Commission's ability to keep new car dealerships alive and well.
Thus, upon recusing those who may be said to have a direct pecuniary interest, the Commission would lack a quorum to authorize any action it may decide to take. However, a brief note of the Commission's previous actions in this matter, as well as its attorneys' involvement in the handling of disputes, is merited.
When Jaguar issued notice of its intention to terminate Blackhorse, the Commission issued a stay in the termination pending a hearing on the matter. When Jaguar was notified that the Commission intended to stay the termination, Jaguar requested that it be provided with the statutory provision conferring such authority upon the Commission. The Commission was unable to provide either Jaguar or the Court with any express statutory authority for such an action.
It is clear that K.R.S. 190.045 allows a manufacturer to terminate a franchise agreement pursuant to the numerous statutory provisions enacted to protect a dealer from wrongful termination, including provisions which provide for monetary compensation by the manufacturer to the dealer whose franchise is being terminated. K.R.S. 190.045(1), (4), (5), (6) and (7). In the event a manufacturer satisfies each of the statutory prerequisites, the termination will be effective. The statute clearly provides for a hearing in the event a dealer believes that his franchise has been wrongfully terminated or in the event the manufacturer has not complied with the provisions under K.R.S. 190.045. The statute does not, however, allow the Commission to prohibit an attempted termination. Absent such authority, it is clear that the Commission took it upon themselves to protect the franchisee.
Moreover, Walton's and Vance's positions with the Kentucky Automobile Dealers Association, [KADA] and their active participation in the cases before the Commission, further calls the Commission's neutrality into question. Walton and Vance both serve as legal counsel for the KADA, and Walton is a registered lobbyist for that organization.
*695 Walton and Vance serve in various capacities in aiding the Commission. Jaguar contends that among other things, the attorneys review the Commission's findings of fact and conclusions of law and at least on one occasion "edited" the facts and conclusions to provide the necessary factual basis for the Commission's conclusions. Moreover, there is evidence that both Walton and Vance have actively participated in the deliberations of various disputes before the Commission. Although Walton and Vance do not possess the power to vote, they clearly possess and exercise the power to influence the Commission in its decisions. Given these attorneys' direct connection with the KADA, the appearance of outside prejudicial influence is too great to be ignored.
The Commission notes that three of the Commission's members are directly associated with Jaguar's parent company, Ford Motor Company. However, this relationship increases the likelihood of bias on the part of these particular Commissioners. Their interest in preventing Ford Motor Company or a subsidiary thereof from "wrongfully" terminating another Ford or Jaguar franchise would be substantial in order to keep Ford or Jaguar from establishing a precedent, one which might later impact upon themselves.
The district courts appear to be split on the self-regulating issue. Courts finding dealer-member commissions constitutional concluded that such panels may regulate their peers. This conclusion is not applicable to the instant action, however, as the Commission is neither regulating an industry standard nor responding to an industry behavioral pattern. Instead, it is acting in an adjudicative capacity to resolve a contract dispute between two distinct groups  new car dealers and manufacturers.
Although the Fifth Circuit has held that a dealer may be as likely to be biased against other dealers and therefore in favor of a manufacturer in a given dispute, see Chrysler Corp. v. Texas Motor Vehicle Comm'n, 755 F.2d 1192 (5th Cir.1985), this Court cannot accept this holding. The Supreme Court has not allowed an adjudicator to sit where the adjudicator has a pecuniary stake in the proceeding. Thus, whether the Commissioners would be biased toward a dealer or a manufacturer in any given instance cannot be determinative. Further, the Fifth Circuit's reasoning is not applicable to the instant facts as the dealer-members here have no conceivable reason to support a manufacturer's ability to terminate a dealer franchise agreement.
The likelihood of bias is too great to be tolerated where the decisionmaker has a pecuniary interest in matter pending before him. Moreover, as a showing of a biased decisionmaker "does not require proof of actual partiality" and as the administrative process "requires the appearance of fairness and the absence of a probability of outside influences on the adjudicator", Utica Packing Co. v. Block, 781 F.2d 71, 77 (6th Cir.1986), Jaguar is substantially likely to be successful on the merits of its case.

B. IRREPARABLE INJURY
The Supreme Court has held that an alleged constitutional injury must be more than a speculative claim of future injury in order to be considered irreparable harm. City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1982). More recently, the Sixth Circuit held that "`[s]ubmission to a fatally biased decisionmaking process is in itself a constitutional injury sufficient to warrant injunctive relief.'" Hammond v. Baldwin, 866 F.2d 172, 176 (6th Cir.1989) (quoting United Church of Medical Center v. Medical Center Comm'n, 689 F.2d 693, 701 (7th Cir.1982)).[1] Thus, the Sixth Circuit has interpreted the submission of a claim to an unconstitutionally biased decisionmaking body as a real and immediate injury and not at all speculative.
As the language employed by the court in Hammond is unambiguous, and speaks directly to the issue at bar, this Court must find that where the presence of an unconstitutionally biased decisionmaker has been established, irreparable harm will result in the submission of a claim to that body. *696 Thus, having established bias due to pecuniary interest, Jaguar has further established irreparable injury.

C. POTENTIAL HARM TO OTHERS
The only parties who may be potentially harmed by an injunction are the Commission and Blackhorse. Jaguar notes that the only potential harm to the Commission would be that it will not be allowed to hear Blackhorse's claims against Jaguar on the merits. The Commission does not argue that it will suffer harm in the face of an injunction, but contends that Blackhorse will be deprived of the opportunity to litigate its wrongful termination claims before the body statutorily established to do so.
It is undoubtedly important to leave free avenues created by the state in which the public has an expectation of availability. However, as this Court must weigh the factors considered when determining whether to issue an injunction, the obvious importance of the right to have claims decided by an impartial tribunal must be deemed greater than the harm in not having a claim heard by an administrative agency.

D. PUBLIC INTEREST
The Commission argues the public interest lies in allowing Kentucky to deal with its own disputes. Jaguar contends that an injunction against the Commission in this matter would strengthen the Commission's ability to fulfill its duties. On the other hand, at least one Commission member has expressed concern about the attitude of the public toward the Commission due to its composition.
In order to address this particular factor, a court must look at the nature of the action before it. Ordinarily, comity will best serve public interest. In the instant case, however, the public interest will be served best by an assurance that decisions of all adjudicative bodies are non-biased. The public cannot be harmed by elimination of the appearance of impropriety from within its administrative adjudicatory system.
Thus, each element to be considered in determining whether to grant a preliminary injunction weighs in favor of the plaintiff. This Court cannot treat the allegations and evidence of bias on the Commission lightly. An injunction is necessary in the instant action as the appearance of biased members on the Commission is too great to be ignored and as the submission of Blackhorse's claim to the Commission will result in harm which would be irreparable.

II. ABSTENTION UNDER THE YOUNGER DOCTRINE
The Commission has moved to dismiss this action pursuant to the doctrine established in Younger which directs courts to abstain from hearing controversies involving important questions of state law and policy. In the event that a matter comes before this Court involving an ongoing state proceeding presenting important state interests and the plaintiff has avenues available to pursue constitutional questions, this Court must abstain from hearing the matter. Younger, 401 U.S. at 45, 91 S.Ct. at 751; see also, Sun Refining and Marketing Company v. Brennan, 921 F.2d 635 (6th Cir.1990). This theory of mandatory abstention has been expanded to prohibit interference with the functions of state administrative agencies. Ohio Civil Rights Comm'n v. Dayton Christian Schools, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).
The dispute between Jaguar and Blackhorse was ongoing before the Commission when Jaguar filed the instant action. Further, the Commission hears important state matters. The argument that Jaguar could present its constitutional questions to the Commission, however, is without merit.
The Commission avers that it could adjudicate the constitutional issues raised herein because the statutory source of its authority does not prohibit it from addressing constitutional questions. Regardless of the considerable evidence of the Commission's bias, an administrative agency's authority is confined to those matters which it is expressly authorized to consider. See Brown v. Jefferson County Police Merit Bd., 751 S.W.2d 23, 25 (Ky.1988). As the Commission lacks authority to determine the validity of its own composition, *697 presentment of this issue to the Commission would serve no purpose. See K.R.S. 190.058(9). Moreover, in light of the Commission's evident bias, review by the Franklin Circuit Court would be an insufficient avenue for Jaguar to pursue its constitutional claims. Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Accepting, arguendo, that Jaguar has an appropriate avenue to pursue its constitutional claims on appeal to the Frankfort Circuit Court, the Commission's clear bias creates an extraordinary circumstance under which this Court may exercise jurisdiction over the matter. Berger v. Cuyahoga County Bar Association, 983 F.2d 718 (6th Cir.1993).
The Commission urges this Court to look carefully at the bias claims raised by Jaguar. That task has been completed. The majority of the Commission's members have been found to have a direct pecuniary interest in the matter at bar. Moreover, the Commission's counsel are hardly nonpartisans. Abstention is not appropriate. Yamaha Motor Corporation USA v. Riney, 21 F.3d 793 (8th Cir.1994).
Accordingly,
IT IS ORDERED HEREIN,
(1) That the Court's order dated July 19, 1995, be, and the same hereby is, SET ASIDE in its entirety and HELD FOR NAUGHT.
(2) That the plaintiff's motion to supplement the record with newly discovered evidence [Record No. 36] be, and the same hereby is, GRANTED.
(3) That the plaintiff's motion for preliminary injunction [Record No. 2] be, and the same hereby is, GRANTED.
(4) That the defendants' motion to dismiss the instant action pursuant to the Younger doctrine on abstention [Record No. 9] be, and the same hereby is, DENIED.
NOTES
[1] The Court in Hammond noted that the injury is the submission itself and that this injury is separate and distinct from an injury that may result from the biased tribunal's decision.