Johnny GEOTES, D.V.M., Plaintiff

v.

**MISSISSIPPI BOARD OF VETERINARY MEDICINE, Stuart C. Denman, D.V.M., Billie U. Flynn, D.V.M., E. Mack Huddleston, D.V.M., Lowell Rogers, D.V.M., Jack L. Nunnery, D.V.M., individually and in their official capacities as Members of the Mississippi Board of Veterinary Medicine Defendants.**

**No. CIV. A. 3:96CV834LN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

May 13, 1997.

Dennis L. Horn, Horn & Payne, Jackson, MS, for Plaintiff.

C. Michael Malski, Carnathan & Malski, Amory, MS, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

Defendants Mississippi Board of Veterinary Medicine and its members filed in this cause a motion to dismiss pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure asserting that under the abstention principles set forth in *Younger v. Har-* *ris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, this court must decline to exercise jurisdiction over this action. Plaintiff Johnny Geotes, D.V.M., responded in opposition to defendants' motion and filed his own motion for preliminary injunction seeking to enjoin disciplinary proceedings against him over which the Board was presiding on the ground that the Board's proceedings are constitutionally flawed. While these motions were pending, the Board concluded its hearings and by order dated February 28, 1997, has revoked plaintiff's license to practice veterinary medicine and precluded his reapplication for licensure for a period of one year. The plaintiff has appealed the Board's order to the Harrison County Chancery Court, which has entered a stay of the Board's order until the appeal is resolved. This court has considered the motions of the parties in light of the Board's ruling and concludes, for reasons that follow, that the Board's motion to dismiss should be granted and plaintiff's motion for preliminary injunction should be denied.

By statute in Mississippi, the Board is authorized, *inter alia,* to "conduct investigations and hearings upon complaints calling for discipline of any licensee or applicant for license [to practice veterinary medicine in this state]." Miss.Code Ann. § 73–39–9. The Board is further granted "the right and power, [after a hearing], to revoke or suspend the license of a veterinarian ... and [to] place said veterinarian ... on prohibition conditioned on future good conduct and compliance with this chapter, and [to] impose an administrative fine not to exceed One Thousand Dollars ($1,000.00) for each such separate offense," for any of a variety of specified reasons. Miss.Code Ann. 73–39–17. Proclaiming its authority under these statutes, the Board notified the plaintiff by letter dated May 16, 1996 that a hearing would be held June 6, 1996 to address "a possible violation of § 73–39–19(k) which permits the revocation or suspension of the license of a veterinarian for employing any person practicing veterinary medicine unlawfully with the knowledge of such illegal practice by said employee." The Board, it appears, had received a "complaint" from a former employee of Dr. Geotes, Kelly Buckmaster, who

claimed that on occasions when the plaintiff was out of town, the "girls were running his clinic," performing such services as "diagnosing, putting animals under anesthesia and suturing them, [and] prescribing medications including controlled drugs such as testosterone and phenobarbital." According to Ms. Buckmaster, "the girls ... [b]asically played vet with Dr. Geotes' blessing."

Prior to the date of the scheduled hearing, Ms. Buckmaster withdrew her complaint, and the Board informed plaintiff, through his counsel, that it was continuing the hearing "indefinitely." Thereafter, however, the Board advised plaintiff in an October 15, 1996 letter that additional complaints had been filed against him, regarding which a hearing would be held on October 25, 1996. The complaints which the Board had received, copies of which were transmitted to plaintiff's counsel, were from two employees of Dr. Geotes who asserted, as had Ms. Buckmaster, that Dr. Geotes has expected and required them, even though they were not licensed, to perform services that they felt constituted the practice of veterinary medicine. One of the complainants also claimed that she had witnessed controlled drugs being sold to clients and non-clients and that Dr. Geotes had provided her with prescription medicine that he knew was for her personal use.

The hearing originally scheduled for October 25 was rescheduled for November 15, 1996. But two days before the hearing, plaintiff filed this lawsuit under 42 U.S.C. § 1983 seeking an injunction against the Board's administrative proceedings and declaratory relief based on allegations that the Mississippi Veterinary Practice Law of 1946, Miss.Code Ann. § 73–31–1 *et seq.*, on its face and as applied, is violative of his due process

rights under the Fifth and Fourteenth Amendments to the United States Constitution. More particularly, he complained that the procedures employed by the Board with respect to the proposed hearing and possible disciplinary action were insufficient because the Board had not promulgated regulations specifying the nature of misconduct that might warrant disciplinary action nor prescribed the penalty assessable for a given offense; had failed to promulgate and/or provide to Dr. Geotes rules for the conduct of its hearings; and had failed to provide plaintiff with adequate notice of the charges and evidence against him or to apprise him of the witnesses who were expected to testify at the hearing. He further complained that the members of the Board had a personal financial stake in the outcome of the charges against him because they receive their compensation from fees and fines imposed by the Board, and that therefore, they are not the disinterested and impartial decisionmakers guaranteed him by the Due Process Clause.

Though Dr. Geotes' counsel served the Board members with the complaint at the start of the hearing, the Board went forward with the hearing. However, after limited testimony, it continued the hearing to December 15, 1996. In the interim, the Board filed its motion to dismiss and plaintiff responded with his motion for a preliminary injunction. The Board convened on December 16 for the scheduled hearing and while it offered plaintiff the opportunity at that time to present evidence relating to the allegations against him, plaintiff's counsel reiterated to the Board plaintiff's position that the proceedings against him were constitutionally flawed and on plaintiff's behalf, declined to participate further in the proceedings.[1] On February 28, 1997, the Board entered an

---

1. Plaintiff's counsel specifically moved the Board members to recuse themselves because of "the funding legislation at issue that renders these proceedings unconstitutional." She also moved the Board to continue the action "pending any ruling from the U.S. District Court." The Board's attorney responded that though the Board "[might] well elect to hold any decision in abeyance until the Federal court rules," the Board preferred to take the motions under advisement and to have the plaintiff "go ahead with any evidentiary materials that [he] want[ed] to put on." Plaintiff declined to go forward, assert-

ing that without more particular notice of the charges that he was supposed to be defending (i.e., without knowing what charges against him the Board was actually considering), under applicable Supreme Court authority, he ran the risk of incriminating himself with respect to (and hence being subject to discipline for) matters that the Board was not even then considering. Thereafter, in the same order by which it revoked Dr. Geotes' license, the Board denied his motion for recusal and his motion to continue the action pending a ruling by this court.

order revoking Dr. Geotes' license. Dr. Geotes timely appealed the Board's ruling to the Harrison County Chancery Court, which has entered an order staying the ordered revocation pending appeal.

■ The Board's motion to dismiss this action is based on the doctrine established in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which requires that the federal courts abstain from hearing claims for injunctive or declaratory relief "[when] assumption of jurisdiction ... would interfere with pending state proceedings, whether of a criminal, civil, or even administrative character.'" *Louisiana Debating and Literary Ass'n v. City of New Orleans,* 42 F.3d 1483, 1489 (5th Cir.1995) (quoting *Word of Faith World Outreach Center Church, Inc. v. Morales,* 986 F.2d 962, 966 (5th Cir.1993)), *cert. denied,* 515 U.S. 1145, 115 S.Ct. 2583, 132 L.Ed. 2d 832 (1995).[2] The *Younger* abstention doctrine is based on notions of comity and federalism, and prohibits federal judicial interference with pending state judicial and state administrative proceedings of a judicial or quasi-judicial character where important state interests are involved and the plaintiff has or will have an opportunity to present his federal claims in the state proceedings. *Id. See also Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). To determine whether *Younger* abstention is appropriate, the Supreme Court has devised a three-part inquiry which asks (1) whether the judicial or judicial-in-nature state proceedings are ongoing; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceeding to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). If each of these inquiries is answered in the affirmative, then the district court must dismiss the federal action and allow the state process to continue.

■ The first *Younger* criteria is satisfied here, for no one disputes that the importance of the state's interest in regulating the practice of veterinary medicine in this state, and assuring compliance by veterinarians with the state's laws and regulations relative to the proper practice of veterinary medicine. The second criteria is also met. Although the Board has now issued its ruling revoking plaintiff's license so that there are no proceedings currently pending against Dr. Geotes *before the Board,* in the court's opinion, the state proceedings are nevertheless properly considered ongoing for *Younger* abstention purposes in light of plaintiff's appeal of the Board's ruling to the chancery court. *See Independence Pub. Media of Philadelphia v. Pennsylvania Public Television Network Comm'n,* 813 F.Supp. 335 (E.D.Pa. 1993); *cf. Thomas v. Texas State Bd. of Medical Examiners,* 807 F.2d 453, 456 (5th Cir.1987) ("The mere availability of state judicial review does not amount to the pendency of state judicial proceedings....").[3] Moreover, it is manifest that plaintiff's objections relating to the Board's failure to promulgate regulations which adequately define punishable conduct, to deficiencies in the notice afforded him of the charges against him, and to the lack of information provided him regarding the Board's procedures and the rules governing the conduct of proceedings before the Board are all challenges which can be (and are being) presented to the chancery court. That is to say, plaintiff has "an adequate opportunity in the state proceeding to raise [these] constitutional challenges." *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521.

---

2. Though the *Younger* decision related to a state criminal prosecution, the principles enunciated therein were later extended to civil judicial proceedings, and then to administrative proceedings of a quasi-judicial or adjudicative nature. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (state administrative hearing of sex discrimination claim against school); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (attorney disciplinary proceeding).

3. Had plaintiff merely had available to him but chosen not exercise his right to appeal the Board's order, then *Thomas* would dictate the conclusion that the proceeding was no longer ongoing. *Thomas v. Texas State Bd. of Medical Examiners,* 807 F.2d 453, 456 (5th Cir.1987). *But see Alleghany Corp. v. Haase,* 708 F.Supp. 1507 (W.D.Wis.1989) (*Younger* abstention prevented consideration by federal court of plaintiff's § 1983 claims even though plaintiff declined to avail itself of state judicial review of agency action).

If these were the plaintiff's only claims, then, the court would conclude without difficulty that *Younger* mandated dismissal of this case. However, a determination of the proper disposition of the case in light of plaintiff's "bias" claim is less readily reached since the law is clear that the federal courts will not countenance, through *Younger* abstention, biased state proceedings.

Plaintiff's claim that Board members are biased due to a pecuniary interest in the proceedings against him derives from that part of Mississippi's Veterinary Practice Act which expressly provides that "[t]here [is] no obligation on the part of the state for the payment of any money as salary or otherwise to any member of the board." Rather,

> the compensation and expenses of said board shall be paid out of the fees and fines as hereinafter provided. The members of the board shall receive as compensation for their services the sum of Forty Dollars ($40.00) for each day in actual service of said board and, in addition, their expenses incident to the meeting of the board. If the fines and fees are not sufficient to defray such compensation and expenses they shall be prorated among the members of said board, after paying operating expenses of said board.

Miss.Code Ann. § 73–39–7. Plaintiff argues that in keeping with this funding scheme by which Board members receive their own pay if and only if there is enough received in fees and *fines* to defray their expenses, Board members have a pecuniary interest in the proceedings before them and therefore, the Board is not composed of independent and impartial decisionmakers. He submits, more specifically, that because they are paid for their services and expenses only if the fees and fines imposed and collected are sufficient to cover those costs, the defendant Board members have a direct, personal, substantial pecuniary interest in finding him to have committed a punishable offense and fining him for that offense.

It is a fundamental precept of due process that those responsible for decisions which affect an individual's property and/or liberty interests must be impartial.[4] It is further indubitably established that decisionmakers who have such a personal pecuniary interest in the outcome of proceedings affecting an individual's property or liberty interests as would likely cause them "not to hold the balance nice, clear and true between the accused and the State" do not qualify as impartial decisionmakers. *Tumey v. Ohio,* 273 U.S. 510, 532, 522, 47 S.Ct. 437, 444, 441, 71 L.Ed. 749 (1927) ("[I]t certainly violates the Fourteenth Amendment and deprives a defendant ... of due process of law to subject his liberty or property to the judgment of a court which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case."). *See also Friedman v. Rogers,* 440 U.S. 1, 18, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1978) (recognizing plaintiff/optometrist's constitutional right to a fair and impartial hearing in any disciplinary hearings conducted against him by State Optometry Board); *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975) (due process requirement of fair trial in fair tribunal applies to administrative agencies as well as to courts); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) ("[T]hose with substantial pecuniary interest in legal proceedings should not adjudicate these disputes."); *Baran v. Port of Beaumont Navigation District of Jefferson County,* 57 F.3d 436, 444 (5th Cir.1995) (recognizing that decisionmaker's actual bias or probability of actual bias stemming from pecuniary interest violates due process guarantee). It has thus been held that abstention in deference to a state court proceeding under *Younger* is inappropriate whenever the state tribunal, due to bias, is unable to adjudicate the case before it in keeping with the requirements of due process. *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (abstention

---

**4.** The Supreme Court has said:

A fair trial in a fair tribunal is a basic requirement of due process. Fairness, of course, requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

inappropriate where state board which would try the case was "so biased by ... pecuniary interest that it could not constitutionally conduct hearings looking toward the revocation of [the plaintiffs'] licenses to practice optometry"); *Ward v. Village of Monroeville,* 409 U.S. 57, 59–60, 93 S.Ct. 80, 82–83, 34 L.Ed.2d 267 (1972) (finding due process violation where mayor/judge was responsible as mayor for the village finances and a major or substantial part of the village's income was derived from fines assessed by the judge/mayor); *Trust & Investment Advisers, Inc. v. Hogsett,* 43 F.3d 290, 295 and n. 6 (7th Cir. 1994). In that circumstance, the federal courts will not abstain even though the plaintiff would ultimately have in the state process the benefit of review—even de novo review— by a forum in which he could assert his constitutional claims. *See Ward v. Village of Monroeville,* 409 U.S. 57, 61, 93 S.Ct. 80, 83– 84, 34 L.Ed.2d 267 (1972) ("Nor ... may the State's ... procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication."); *see also Jaguar Cars v. Cottrell,* 896 F.Supp. 691, 696 (E.D.Ky.1995) (in light of Commission's "evident bias," judicial review of Commission's decision "would be an insufficient avenue for Jaguar to pursue its constitutional claims"); *Cronson v. Clark,* 645 F.Supp. 793, 796 (C.D.Ill.1986) ("hearings before a partial tribunal are not constitutionally acceptable simply because the disadvantaged party has the opportunity to appeal").[5] In fact, not only will the federal court not abstain where the potential for bias is shown, but upon a finding that members of a state tribunal have a personal interest that might preclude their fair and impartial hearing of charges, it is appropriate for the federal court to enjoin the state proceedings against

the plaintiff. *Friedman,* 440 U.S. at 18, 99 S.Ct. at 898; *Withrow,* 421 U.S. at 47, 95 S.Ct. at 1464 (injunction appropriate where "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable").

Defendants in this case submit that there simply is no disqualifying potential for bias here because, despite their statutory authority, they have not imposed a fine against any veterinarian in at least fifteen years. They further submit that plaintiff's bias claim is moot in any event since the Board has already ruled and in ruling, *did not fine Dr. Geotes.* And they reiterate that plaintiff's remaining challenges to the Board's proceedings can be presented to and decided by the state court in the still ongoing proceedings. Accordingly, defendants maintain that this case must be dismissed under *Younger.* For his part, plaintiff acknowledges that the Board has ended its consideration of the complaints against him and though it found a violation, did not impose a fine against him (a fact which would belie a claim of actual bias). Plaintiff also acknowledges that since the Board has ruled, he is not currently involved in proceedings *before the Board.* He submits, though, that the state proceedings against him are not final, and that his claims are not moot because (1) he is currently continuing to operate his veterinary practice and, because of the Board's failure to promulgate regulations defining what conduct can subject him to disciplinary action, there is still the potential that the Board might choose to initiate renewed disciplinary proceedings for actions which he might take in his practice; and because (2) there is still the potential that he might be fined if the chan-

**5.** Some cases have treated the existence of bias on the part of decisionmakers as an exception to the applicability of *Younger*—an "extraordinary circumstance" which removes a case from the *Younger* rule. *See Kugler v. Helfant,* 421 U.S. 117, 124–25 n. 4, 95 S.Ct. 1524, 1530–31 n. 4, 44 L.Ed.2d 15 (1975) (existence of biased tribunal is one of the "extraordinary circumstances alluded to in *Younger* where abstention is inappropriate even though all of the *Younger* elements have ostensibly been met"); *Jaguar Cars v. Cottrell,* 896 F.Supp. 691, 696 (E.D.Ky.1995) ("[T]he Commission's clear bias creates an extraordinary circumstance under which this Court may exer-

cise jurisdiction over the matter."); *Independence Pub. Media of Philadelphia, Inc. v. Pennsylvania Public Television Network Comm'n,* 813 F.Supp. 335, 343 (E.D.Pa.1993) ("bias exception" is "a significant exception to the application of *Younger* "). Others have viewed it as implicating the third of the *Younger* criteria, holding that where the decisionmaker is biased, the affected party has no adequate opportunity to timely raise constitutional challenges. *See Yamaha Motor Corp. v. Riney,* 21 F.3d 793, 797 n. 10 (8th Cir.1994) ("an incompetent tribunal affects plaintiff's opportunity to litigate federal constitutional claims before a state tribunal").

cery court were to remand the case to the Board or if the Board were at some future time to initiate new proceedings against him. In light of the Board's ruling and the parties' positions in the wake of that ruling, the question thus arises whether the Board members' alleged bias might still provide a basis upon which plaintiff might avoid *Younger* abstention and upon which this court might enjoin further state proceedings relating to the charges against Dr. Geotes. The court concludes that it does not.[6]

It bears repeating that plaintiff's only claim which is potentially exempt from the *Younger* rule of abstention (or which fails to satisfy the *Younger* abstentia criteria)[7] is his bias claim, and that claim is premised solely on the Board's alleged predilection to impose fines so that the payment of their fees and expenses is assured. Consequently, if, as the Board argues, plaintiff's bias claim were moot since the Board did not fine plaintiff, then this court would be bound to dismiss the case based on *Younger* since no other claim which plaintiff has asserted would warrant or support federal interference with the state proceeding. However, in the court's opinion, even if plaintiff's bias claim did not become moot upon the Board's ruling in plaintiff's case, dismissal would still be in order.

6. After the Board ruled, the Board's attorney apprised the court of that fact and subsequently submitted to the court an affidavit in which he asserted that in the fifteen years he has represented the Board, the Board has not imposed any fines. Plaintiff responded with his own affidavit in which he claims that eight to ten years ago, he was fined $500 by the Board for failing to timely fulfill continuing education requirements. Plaintiff now argues that even if the evidence did show that the Board has never imposed a fine, it still is statutorily authorized to do so and in the absence of an injunction, could at any time elect to invoke that authority. He reasons, therefore, that his claim is not moot even if the Board has a *policy* against imposing fines. While a policy or long-standing practice of not imposing fines might not have the effect of rendering the plaintiff's claim moot, it might well have the effect of rendering it meritless. If the assessment of a fine in a case would actually improve—even if only slightly—a Board member's financial position, then there would appear to be the potential for bias by the Board members that would disqualify them from deciding the case. *See Exxon Corp. v. Heinze*, 32 F.3d 1399, 1403 (9th Cir.

■ Generally speaking, the "bias" exception to *Younger* is based on a recognition that while the federal courts ordinarily ought not interfere with ongoing state proceedings, the federal courts "need not defer under *Younger* to ... [a state] agency crippled by pecuniary bias." *Independence Pub. Media of Philadelphia, Inc. v. Pennsylvania Public Television Network Comm'n*, 813 F.Supp. 335, 343 (E.D.Pa.1993). Indeed, the specific rationale upon which the Supreme Court has excepted due process charges of a biased state decisionmaker from the *Younger* rule of abstention and upon which the courts have relied to enjoin state proceedings by potentially biased decisionmakers, is that a party "is entitled to a neutral and detached magistrate *in the first instance.*" *Ward*, 409 U.S. at 61–62, 93 S.Ct. at 83–84 (emphasis added). This is likewise what has prompted the Supreme Court to conclude that review by an unbiased state tribunal does not render the state's procedure constitutionally acceptable. *Id.; see also Yamaha Motor Corp. v. Riney*, 21 F.3d 793, 797 n. 10 (8th Cir.1994). In this vein, the court in *United Church of the Medical Center v. Medical Center Commission*, 689 F.2d 693, 701 (7th Cir.1982), explained, in the context of a request to enjoin proceedings before a state commission on the basis of bias, that,

1994) ("litigation before financially interested judges and jurors raises fundamental issues of due process, even when the judges' financial interest is relatively small"). However, if the proof were to establish that Board members have been fully remunerated for their expenses and the statutory fee to which they are entitled *without resort to fine monies* such that they stood to gain nothing from the imposition of fines, i.e., would not receive any personal or financial benefit, then it would necessarily follow that they had no sufficiently substantial interest to be disqualified from hearing the case on due process grounds. *See Rite Aid Corp. v. State Bd. of Pharmacy of N.J.*, 421 F.Supp. 1161, 1174 (D.N.J. 1976); cf. *Alpha Epsilon Phi v. City of Berkeley*, No. C095–0562 SI, 1995 WL 761257, at *3 (N.D.Cal.1995) (members of Rent Stabilization Board lacked direct financial interest in outcome of hearing since hearing officer received a regular salary set by the City under its civil service system and Board members received a fixed stipend, unaffected by specific decisions of the Board).

7. *See supra* page 1031.

[s]ubmission to a fatally biased decision-making process is in itself a constitutional injury sufficient to warrant injunctive relief, where irreparable injury will follow in the due course of events, even though the party charged is to be deprived of nothing until the completion of the proceedings.... [T]he precise violation ... is the subjection to an unconstitutionally constituted decisionmaker. That injury has already occurred, and is therefore sufficiently "immediate" to warrant injunctive relief, ... [and] judicial review of [the] biased state administrative proceedings, even if on a de novo basis, [does] not obviate the need for injunctive relief.

█ In this case, however, unlike any of the cases cited herein, the Board ruled in plaintiff's case before this court rendered a decision on the motions to dismiss and enjoin.[8] And because the Board has already acted in plaintiff's case, any violation of plaintiff's right to an unbiased decisionmaker "in the first instance" is a *fait accompli*; it can

no longer be avoided, only remedied. This court thus perceives no legitimate basis for enjoining further state proceedings.[9] Additionally, as there is nothing to prevent the plaintiff from now seeking his remedy from the state chancery court (by presenting his objections to the Board's proceedings to the chancery court), there is no longer a reason to suspend the *Younger* rule.[10] Or put another way, from the standpoint of a *Younger* analysis, since the court at this time would be deferring to the chancery court and not to the allegedly biased Board,[11] the bias exception no longer pertains.

In summary, it is this court's opinion that as plaintiff has passed the point in the state proceedings at which he might have encountered bias, and as plaintiff now has ample opportunity to raise his constitutional concerns in state court, including his concern relating to the Board members' potential bias, intervention by the federal courts is no longer necessary nor, applying the *Younger* rationale, appropriate.[12] Accordingly, it is

---

8. The court notes that plaintiff did not move for a temporary restraining order but rather sought only a preliminary injunction, and did not request of the court or indicate to the court that immediate or expedited consideration of the motion was needed, perhaps because plaintiff believed, albeit erroneously, that the Board had voluntarily suspended its proceedings.

9. Of course, the court could conceivably enjoin the Board's order—but even that is not needed since the chancery court has already stayed the order for the pendency of plaintiff's appeal.

10. Plaintiff argues that unless *this* court acts to enjoin the state proceedings, he remains potentially subject to being fined by the Board if the chancery court were to remand his case to the Board or if the Board were to commence disciplinary proceedings against him for actions which he might in the future take in his practice. This argument overlooks the fact that plaintiff is now in a state judicial forum—an unbiased forum—in which he can fully present and argue his constitutional claims, *including his claim of Board bias*. And while it is true, at least in this circuit, that "[a] person who contends that his constitutional rights have been violated by a state administrative proceeding is not required to resort to an appeal to state courts before seeking relief in a federal forum," *Thomas v. Texas State Board of Medical Examiners*, 807 F.2d 453, 455 (5th Cir.1987), where a litigant does initiate state court review of a state administrative decision *and that review is still pending*, a federal action

interferes with the state processes, and the policies on which *Younger* is based are implicated, *id.* at 457.

11. There is no basis alleged by plaintiff for concluding that the Chancellor might harbor any bias that would preclude his fair adjudication of plaintiff's appeal.

12. While "actual bias" is not required to invoke what the court will call the "bias exception" to *Younger*, that exception does not apply where there is a mere possibility of bias resulting from an insignificant or insubstantial pecuniary interest which could not logically be viewed as "offer[ing] a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused." *Ward*, 409 U.S. at 60, 93 S.Ct. at 83. That is not such a bias as would preclude a decisionmaker from constitutionally deciding the plaintiff's case. *Cf. Gibson*, 411 U.S. at 579, 93 S.Ct. at 1698 (board members' pecuniary interest had "sufficient substance" to disqualify them). Consequently, this court's initial inclination upon review and consideration of the parties' motions, i.e., before the Board had issued its ruling, was to direct the presentation of evidence relating to the bias issue since "the facts [were not] sufficiently developed to allow the court to make a realistic assessment of whether the potential for bias [was] sufficient to warrant a federal court to step in to protect the plaintiff's procedural due process rights."

ordered that plaintiff's motion to enjoin is denied and defendants' motion to dismiss is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

*Trust & Investment Advisers, Inc. v. Hogsett,* 43 F.3d 290, 297 (7th Cir.1994) (mere allegation of bias does not in and of itself render *Younger* abstention appropriate; "at least some findings are necessary before determining whether abstention is warranted"); *see also Exxon Corp. v. Heinze,* 32 F.3d 1399, 1404 (9th Cir.1994) (requiring proof of potential impact of claims so that court could "weigh intelligently the potential bias of Alaska judges and jurors [and] determine whether their alleged interest has 'sufficient substance to disqualify them,'"); *Torres Torres v. Hernandez Colon,* 656 F.Supp. 372, 378 (D.P.R. 1987) (declining to enjoin state hearing where plaintiff failed to present convincing evidence that commissioners "were so tainted by pecuniary and political interests in his case that they were in fact violating his right to due process of law"); *Rite Aid Corp. v. Board of Pharmacy of State of N.J.,* 421 F.Supp. 1161, 1170 (D.N.J. 1976) (requiring plaintiffs to present evidence to prove, "if they could, the existence of the required substantial pecuniary interest"). Since the court concludes that the plaintiff may present his bias claim to the state court, this court need not and does not decide plaintiff has demonstrated the requisite bias or whether more proof should be required of the parties. And although plaintiff professes concern over the possibility that the chancery court might remand his case to the Board, this court presumes that if the Chancellor were to find merit in plaintiff's assertion that the Board proceedings violate his due process rights, either because of bias or for some other reason, he would conclude that a remand to the Board was inappropriate.