## WARD *v.* VILLAGE OF MONROEVILLE

No. 71-496.   Argued October 17, 1972—Decided November 14, 1972

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and DOUGLAS, STEWART, MARSHALL, BLACKMUN, and POWELL, JJ., joined. WHITE, J., filed a dissenting opinion, in which REHNQUIST, J., joined, *post,* p. 62.

*Bernard A. Berkman* argued the cause for petitioner. With him on the brief was *Niki Z. Schwartz.*

*Franklin D. Eckstein* argued the cause for respondent. With him on the brief was *Joseph F. Dush.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Pursuant to Ohio Rev. Code Ann. § 1905.01 *et seq.* (1968), which authorizes mayors to sit as judges in cases of ordinance violations and certain traffic offenses, the Mayor of Monroeville, Ohio, convicted petitioner of two traffic offenses and fined him $50 on each.   The Ohio Court of Appeals for Huron County, 21 Ohio App. 2d 17,

254 N. E. 2d 375 (1969), and the Ohio Supreme Court, 27 Ohio St. 2d 179, 271 N. E. 2d 757 (1971), three justices dissenting, sustained the conviction, rejecting petitioner's objection that trial before a mayor who also had responsibilities for revenue production and law enforcement denied him a trial before a disinterested and impartial judicial officer as guaranteed by the Due Process Clause of the Fourteenth Amendment. We granted certiorari. 404 U. S. 1058 (1972).

The Mayor of Monroeville has wide executive powers and is the chief conservator of the peace. He is president of the village council, presides at all meetings, votes in case of a tie, accounts annually to the council respecting village finances, fills vacancies in village offices and has general overall supervision of village affairs. A major part of village income is derived from the fines, forfeitures, costs, and fees imposed by him in his mayor's court. Thus, in 1964 this income contributed $23,589.50 of total village revenues of $46,355.38; in 1965 it was $18,508.95 of $46,752.60; in 1966 it was $16,085 of $43,585.13; in 1967 it was $20,060.65 of $53,931.43; and in 1968 it was $23,439.42 of $52,995.95. This revenue was of such importance to the village that when legislation threatened its loss, the village retained a management consultant for advice upon the problem.[1]

---

[1] Ordinance No. 59-9:

"WHEREAS, the legislation known as the County Court law passed by the 102nd General Assembly greatly reduces the jurisdictional powers of Mayor Courts as of January 1, 1960; and

"WHEREAS, such restrictions may place such a hardship upon law enforcement personnel in this village and surrounding areas as to endanger the health, welfare and safety of persons residing or being in our village; and

"WHEREAS, other such provisions of this legislation may cause such a reduction in revenue to this village that an additional burden

Conceding that "the revenue produced from a mayor's court provides a substantial portion of a municipality's funds," the Supreme Court of Ohio held nonetheless that "such fact does not mean that a mayor's impartiality is so diminished thereby that he cannot act in a disinterested fashion in a judicial capacity." 27 Ohio St. 2d, at 185, 271 N. E. 2d, at 761. We disagree with that conclusion.

The issue turns, as the Ohio court acknowledged, on whether the Mayor can be regarded as an impartial judge under the principles laid down by this Court in *Tumey* v. *Ohio*, 273 U. S. 510 (1927). There, convictions for prohibition law violations rendered by the Mayor of North College Hill, Ohio, were reversed when it appeared that, in addition to his regular salary, the Mayor re-

---

may result from increased taxation and/or curtailment of services essential to the health, welfare and safety of this village; . . .

. . . . .

"BE IT ORDAINED BY THE VILLAGE OF [MONROE-VILLE] OHIO:

"Section 1. That the services of the management consulting firm of Midwest Consultants, Incorporated of Sandusky, Ohio, be employed to conduct a survey and study to ascertain the extent of the effects of the County Court Law on law enforcement and loss of revenue in and to the Village of [Monroeville], Ohio, so that said Village can prepare for the future operations of the Village to safeguard the heath [*sic*], welfare and safety of its citizens . . . . ."

Moreover, Monroeville's Chief of Police, appointed by the Mayor, Ohio Rev. Code Ann. § 737.15 (Supp. 1971), testified that it was his regular practice to charge suspects under a village ordinance, rather than a state statute, whenever a choice existed. App. 9. That policy must be viewed in light of § 733.40 (1954), which provides that fines and forfeitures collected by the Mayor in state cases shall be paid to the county treasury, whereas fines and forfeitures collected in ordinance and traffic cases shall be paid into the municipal treasury. Petitioner asserts that the Mayor conceded at trial that this policy was carried out under the Mayor's orders. The record lends itself to this inference. App. 10–11.

ceived $696.35 from the fees and costs levied by him against alleged violators. This Court held that "it certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." *Id.*, at 523.

The fact that the mayor there shared directly in the fees and costs did not define the limits of the principle. Although "the mere union of the executive power and the judicial power in him can not be said to violate due process of law," *id.*, at 534, the test is whether the mayor's situation is one "which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused . . . ." *Id.*, at 532. Plainly that "possible temptation" may also exist when the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court. This, too, is a "situation in which an official perforce occupies two practically and seriously inconsistent positions, one partisan and the other judicial, [and] necessarily involves a lack of due process of law in the trial of defendants charged with crimes before him." *Id.*, at 534.

This situation is wholly unlike that in *Dugan* v. *Ohio,* 277 U. S. 61 (1928), which the Ohio Supreme Court deemed controlling here. There the Mayor of Xenia, Ohio, had judicial functions but only very limited executive authority. The city was governed by a commission of five members, including the Mayor, which exercised all legislative powers. A city manager, together with the commission, exercised all executive powers. In those circumstances, this Court held that the Mayor's relation-

ship to the finances and financial policy of the city was too remote to warrant a presumption of bias toward conviction in prosecutions before him as judge.

Respondent urges that Ohio's statutory provision, Ohio Rev. Code Ann. § 2937.20 (Supp. 1971), for the disqualification of interested, biased, or prejudiced judges is a sufficient safeguard to protect petitioner's rights. This argument is not persuasive. First, it is highly dubious that this provision was available to raise petitioner's broad challenge to the mayor's court of this village in respect to all prosecutions there in which fines may be imposed. The provision is apparently designed only for objection to a particular mayor *"in a specific case where the circumstances in that municipality might warrant a finding of prejudice in that case."* 27 Ohio St. 2d, at 184, 271 N. E. 2d, at 760 (emphasis added). If this means that an accused must show special prejudice in his particular case, the statute requires too much and protects too little. But even if petitioner might have utilized the procedure to make his objection, the Ohio Supreme Court passed upon his constitutional contention despite petitioner's failure to invoke the procedure. In that circumstance, see *Raley* v. *Ohio,* 360 U. S. 423, 436 (1959), he may be heard in this Court to urge that the Ohio Supreme Court erred in holding that he had not established his Fourteenth Amendment claim.

Respondent also argues that any unfairness at the trial level can be corrected on appeal and trial *de novo* in the County Court of Common Pleas. We disagree. This "procedural safeguard" does not guarantee a fair trial in the mayor's court; there is nothing to suggest that the incentive to convict would be diminished by the possibility of reversal on appeal. Nor, in any event, may the State's trial court procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is en-

titled to a neutral and detached judge in the first in-
stance.[2]    Accordingly, the judgment of the Supreme
Court of Ohio is reversed and the case is remanded for
further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE WHITE, with whom MR. JUSTICE REHN-
QUIST joins, dissenting.

The Ohio mayor who judged this case had no direct
financial stake in its outcome.    *Tumey* v. *Ohio,* 273 U. S.
510 (1927), is therefore not controlling, and I would
not extend it.

To justify striking down the Ohio system on its face,
the Court must assume either that every mayor-judge
in every case will disregard his oath and administer
justice contrary to constitutional commands or that this
will happen often enough to warrant the prophylactic,
*per se* rule urged by petitioner.    I can make neither as-
sumption with respect to Ohio mayors nor with respect
to similar officials in 16 other States.    Hence, I would
leave the due process matter to be decided on a case-by-
case basis, a question which, as I understand the posture
of this case, is not now before us.    I would affirm the
judgment.

---

[2] The question presented on this record is the constitutionality of
the Mayor's participation in the adjudication and punishment of a
defendant in a litigated case where he elects to contest the charges
against him.    We intimate no view that it would be unconstitutional
to permit a mayor or similar official to serve in essentially a minis-
terial capacity in a traffic or ordinance violation case to accept a
free and voluntary plea of guilty or *nolo contendere,* a forfeiture of
collateral, or the like.