**Terry NOE et al.**

v.

**The COUNTY OF LAKE, INDIANA et al.**

**No. 73 H 157.**

United States District Court,
N. D. Indiana,
Hammond Division.

July 20, 1978.

Ivan E. Bodensteiner, Valpariso, Ind., Palmer C. Singleton, Jr., Highland, Ind., Burton D. Wechsler, Washington, D. C., for plaintiffs.

Bernard M. Tetek, Gerald N. Svetanoff, Gary, Ind., W. Henry Walker, East Chicago, Ind., Martin H. Kinney, Merrillville, Ind., Robert L. Deloney, Gary, Ind., Darrel K. Diamond, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## ORDER

ALLEN SHARP, District Judge.

On August 1, 1977 the defendants, County of Lake et al. (hereinafter referred to as defendants) filed a motion for summary judgment. On October 4, 1977 the plaintiffs, Terry Noe et al. (hereinafter referred to as plaintiffs) filed a cross-motion for summary judgment.

After a careful review of the record, defendants' motion for summary judgment must be and is therefore GRANTED.

## STATEMENT OF FACTS AND PROCEEDINGS

Plaintiffs filed this civil rights action on June 15, 1973 seeking injunctive and declaratory relief as well as damages. The essence of plaintiffs' claim is that indigent criminal defendants charged in the Lake County Superior Court receive constitutionally deficient representation from the Lake County Pauper Attorney Staff.

Plaintiffs voluntarily dismissed their claim for damages against all the defendants other than Lake County on October 1, 1973. Shortly thereafter, on November 1, 1973 the late Judge Beamer found that this Court has jurisdiction and that plaintiffs have a cognizable claim against the individual defendants under 42 U.S.C. § 1983. Additionally, it was noted that plaintiffs have a claim against the County of Lake directly under the United States Constitution.

On January 6, 1975 this Court granted leave for three additional plaintiffs to intervene in this case. Further, on March 19, 1975, the Court determined that this case should proceed on behalf of a plaintiff class consisting of "all indigents who have been or will be arrested and charged with the commission of crimes in Lake County, Indiana, and who have been or will be assigned the Lake County Public Defender as counsel."

On February 25, 1976 the Court granted plaintiffs' motion for leave to file an amended complaint which added as defendants the remaining three judges of the Lake County Superior Court, Criminal Division.

A pretrial conference was held on October 1, 1976 and pursuant thereto a pretrial order was entered on February 2, 1977. At a status conference held on June 3, 1977 the defendants were given until August 1, 1977 to move for summary judgment and plaintiffs were given until September 6, 1977 in which to respond by filing a cross-motion. Plaintiffs subsequently sought an enlargement of time in which to file their cross-motion and they were given until October 4, 1977 pursuant to the Court's order of September 6, 1977.

The two issues presented to the Court on the opposing motions for summary judgment are as follows: the Lake County Public Defender system is in an "inherently compromising" position in that the pauper attorneys are appointed and "employed" by the presiding judge and the Lake County Public Defender system fails to provide effective assistance of counsel as guaranteed by the Sixth Amendment.

## CONFLICT OF INTEREST

The first issue raised by the plaintiffs is whether or not the appointment and hiring of a full-time or a part-time staff of defenders by the judge or under the judge's control results in a conflict in the sense that these defenders regularly appear before their employer (appointing judge) and whether that somehow compromises their representation.

It is elementary that " 'a fair trial in a fair tribunal is a basic requirement of due process.' " *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). Boiled to its bare essentials, a fair trial as defined in *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975), is as follows:

"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."

Plaintiffs contend that the above precepts are violated in the Lake County Pub-

lic Defender System. Plaintiffs argue that in Lake County this necessary tripartite balance between the judge, prosecutor and defense counsel is lacking because one participant—a judge—is the employer of another—the pauper attorney staff. Plaintiffs argue that this employment relationship systematically violates the plaintiffs' right to a fair trial as protected by the due process clause of the Fourteenth Amendment.

To define what historically has been a conflict of interest, this Court looks to Supreme Court pronouncements on this issue.

The principal case involving a judicial conflict of interest resulting in a denial of due process is *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). In this case, the Supreme Court found due process violated where the judge, who was also the town's mayor, collected the costs paid by a defendant whom he had convicted. The court stated its holding as follows:

> "it certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." Id., at 523, 47 S.Ct., at 441.

In this case it is not alleged that defendants had any financial stake or personal stake in the appointment of the pauper attorneys. More broadly, the Supreme Court has ruled that:

> "[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him to hold the balance nice, clear and true between the state and the accused, denies the latter due process of law."

*Tumey, supra; Ward v. Village of Monroeville,* 409 U.S. 57, 60, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Barry v. United States,* 528 F.2d 1094 (7th Cir. 1976). The conflicts of interest present in the cases in which this standard was enunci-

ated were much more extreme than the lack of impartiality suggested here.

Furthermore, in *United States ex rel. Reid v. Richmond,* 277 F.2d 702 (2d Cir. 1960), the court summarily rejected the plaintiff's contention that the Public Defender System of Connecticut was violative of due process rights. Even though the mechanics of the Connecticut system (now repealed) was different from the Indiana system, the fact remains that the court found no violation of due process resulting from the appointment of the public defender by the presiding judge.

The plaintiffs in their brief addressing this issue cite a number of cases which come within the ambit of *Tumey, supra.* However, plaintiffs do not cite a case which is directly on point with the issue at bar. Furthermore, plaintiffs acknowledge on page 33 of plaintiffs' motion for partial summary judgment filed on October 4, 1977, that "there are no precedents precisely dealing with the type of employer/employee relationship in issue here. Therefore, this Court is hard pressed to discover any logic, let alone case law, to support the plaintiffs' position, with respect to the claim that the Court's employing of pauper attorneys and supporting staff creates a situation which compromises representation of indigent defendants.

It would appear to be a very widespread, if not universal practice for the judge in a criminal case to be responsible for the appointment of counsel for indigent defendants. This is the practice in this Court and other United States District Courts. It is, in fact, difficult to conceive of any system other than appointment by the judge, since the judge must bear the primary responsibility for the fairness of the trial proceedings in each individual case and in the best position to oversee the operation of the system.

This Court holds that the plaintiffs' rationale is not well-founded in that it fails to recognize the role of the trial judge in the criminal justice process. The role of the trial judge is nonadversary; his role requires impartiality and neutrality. This Court doubts that the plaintiffs would dis-

pute this description of the judge's role. In view of the impartial and neutral role played by the judge, it is difficult to imagine how the employment of pauper attorneys by the Court could be considered an "inherently compromising" situation. In any event, it is not a situation which case law holds to be constitutionally defective.

After reviewing the entire record there has been no allegations by the plaintiffs nor has any discovery indicated any judicial impropriety which would suggest that the defendants had any "direct, personal, substantial pecuniary interest in reaching a conclusion against [the defendants]," *Tumey, supra*. Therefore, the plaintiffs are inviting this Court to furrow a new ground for judicial conflict of interest. This Court respectfully declines the invitation.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ The second issue raised by the plaintiffs is whether or not the Lake County delivery system for indigent defense services violates the plaintiffs' rights to effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution.

The plaintiffs in the instant case seek relief through the vehicle of 42 U.S.C. § 1983. The plaintiffs contend that the Lake County Pauper Defense System fails to meet the constitutional requirement of minimum professional standard of competence as afforded by the Sixth Amendment and enunciated in *United States ex rel. Williams v. Twomey*, 510 F.2d 634 (7th Cir.) *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975).

The defendants' response to this contention is two-pronged. The defendants' first counter is that the Sixth Amendment only requires "effective" assistance of counsel and not "perfect" assistance. The defendants argue that the plaintiffs confuse "room for improvement" with constitutional defectiveness. In fact, on June 3, 1977 plaintiff's counsel, Mr. Bodensteiner, in a colloquy with the Court admitted that the delivery of indigent defense services has increased markedly,

"THE COURT: I can't jump on anybody about being late.

Now, would you tell me quickly what your theory is on this case from the plaintiffs' standpoint. What you think you will be able to prove.

MR. BODENSTEINER: Well, the nature of the case has changed substantially since it was filed.

At this point initially, it dealt primarily, or one of the main claims, was the general lack of resources available for indigent representation in the county.

Since that time, that was substantially increased. It has gone from two part-time defenders to twelve or thirteen part-time defenders with additional resources for investigators, for secretaries, et cetera.

*So the primary focus or emphasis of the case right now has to do with a couple other areas.*" (emphasis added)

Defendants' second counter to plaintiffs' argument is that the Court should be mindful of the teaching of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). *Younger* and *Huffman* cautioned the federal courts against injunctive relief in pending state court criminal prosecutions. While the plaintiffs in this case do not expressly seek to enjoin a specific state criminal proceeding, the granting of the relief would come arguably close to the kind of interference with state court proceedings that *Younger* and *Huffman, supra,* forbid except under limited and special circumstances. This is especially true insofar as the plaintiffs seek relief in their class action for indigent defendants whose state court criminal proceedings are currently pending.

As a corollary to this second point the defendants argue that the members of the plaintiffs' class have ample opportunity in the Supreme Court and the Court of Appeals of Indiana to raise the question of ineffective assistance of counsel in their individual cases. Allegations of ineffective assistance may be raised under Indiana Post-Conviction Relief Rules or under a

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

Each plaintiff in the state criminal proceedings involved here have a full opportunity to develop the issue of inadequate assistance of counsel on a full record in each particular proceeding. Implicit in the plaintiffs' position here is the invitation (and burden) for this Court to make a complete and thorough review of this issue in numerous cases. Since each concerned plaintiff has a full opportunity for such review 42 U.S.C. § 1983 is not the appropriate remedy to achieve same in the procedural and factual context of this case.

After reviewing the entire record and the attendant case law as to the issue of denial of the Sixth Amendment right to effective assistance of counsel, this Court finds the defendants' argument convincing. Therefore, in the interest of federal judicial abstention, *Younger, supra,* and the fact that plaintiffs' allegations may be raised more appropriately through the Indiana Post Conviction Relief Rules or through a writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, the defendants' Motion for Summary Judgment is hereby GRANTED.