No. 90–5774. ROBERTSON v. CALIFORNIA. Sup. Ct. Cal. Certiorari denied.

JUSTICE BLACKMUN, with whom JUSTICE MARSHALL joins, dissenting.

I would grant the petition for certiorari to determine whether petitioner's capital sentence was imposed in violation of the Eighth and Fourteenth Amendments.

In 1978, a California jury convicted petitioner Andrew Edward Robertson on two counts of first-degree murder and sentenced him to death. On appeal, the Supreme Court of California reversed that judgment as to the penalty. *People* v. *Robertson*, 33 Cal. 3d 21, 655 P. 2d 279 (1982). The second sentencing proceeding was assigned to Judge Roy E. Chapman. Robertson waived his right to be sentenced by a jury, and Judge Chapman sat as trier of fact during the second penalty phase.

Robertson introduced extensive evidence in mitigation. Among this was the testimony of his mother and sister concerning Robertson's difficult childhood, during which he allegedly suffered abuse at the hands of his father and stepfather. Through these witnesses, Robertson presented evidence that he had had developmental difficulties as a young child and was slow to walk and talk; that his parents were divorced when he was young; that his father subsequently had kidnaped him; that, upon being returned from the kidnaping, he had been cared for by a disturbed mother and a strict grandmother; and that at age nine he had been diagnosed as suffering from mild mental retardation with possible brain damage. See *People* v. *Robertson*, 48 Cal. 3d 18, 32, 767 P. 2d 1109, 1114, cert. denied, 493 U. S. 879 (1989). Robertson, however, was again sentenced to death, and the California Supreme Court, by a divided vote, affirmed. 48 Cal. 3d, at 64, 767 P. 2d, at 1136.

In December 1989, Robertson's counsel for the first time learned that Judge Chapman, prior to his going on the bench, had represented Robertson's mother, Lillian Goodin, in her divorce from Robertson's stepfather. App. D to Brief in Opposition 1. The divorce proceeding was initiated by Robertson's stepfather in 1963 and involved extensive allegations by both parties of domestic violence and child abuse. In March 1963, Judge Chapman, then Lillian Goodin's attorney, sought a temporary restraining order against Robertson's stepfather, prohibiting him from "threatening, molesting, injuring, harassing, or annoying [Goodin] and [Goodin's] children." App. C. to Brief in Opposition 4. In

support of the request for a temporary restraining order, Robertson's mother executed a declaration attesting that Robertson's stepfather "has struck and beat [Goodin], the minor child of [Goodin and the stepfather], and [Goodin's] children by a prior marriage." *Id.*, at 3. Judge Chapman withdrew from his representation of Robertson's mother on November 16, 1967. When interviewed by Robertson's counsel in 1989, Judge Chapman acknowledged that "the court documents demonstrated that he had represented" Goodin, but stated that he had no present recollection of the divorce proceeding, and that he believed that he had no independent recollection of them at the time of Robertson's sentencing. App. D to Brief in Opposition 2.

Immediately upon learning of the past representation, Robertson filed a petition for a writ of habeas corpus in state court. After the California Supreme Court denied Robertson's petition, he filed in this Court a petition for a writ of certiorari. I would grant that petition.

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U. S. 133, 136 (1955); see also *Ward* v. *Village of Monroeville*, 409 U. S. 57 (1972). The entitlement to an impartial tribunal applies to the sentencing phase of a criminal proceeding as well as to the guilt phase. See *Witherspoon* v. *Illinois*, 391 U. S. 510, 518 (1968). Due process demands more than that the sentencer actually *be* impartial; rather, "'justice must satisfy the appearance of justice.'" *In re Murchison*, 349 U. S., at 136, quoting *Offutt* v. *United States*, 348 U. S. 11, 14 (1954); see also *In re Murchison*, 349 U. S., at 136 ("[O]ur system of law has always endeavored to prevent even the probability of unfairness"); *Mayberry* v. *Pennsylvania*, 400 U. S. 455, 469 (1971) (Harlan, J., concurring) ("[T]he appearance of evenhanded justice . . . is at the core of due process"). The risk that Judge Chapman may have brought to bear on his decision specific information about Robertson not presented as evidence in the sentencing proceeding is too great in this case to satisfy the demands of the Due Process Clause. See *In re Murchison*, 349 U. S., at 136 ("Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties").

Moreover, the Fourteenth Amendment prohibits consideration during the sentencing phase of evidence that the defendant has not had an opportunity to rebut. Consequently, in *Gardner* v. *Florida*, 430 U. S. 349, 358 (1977) (plurality opinion), the Court

rejected as unconstitutional a "capital-sentencing procedure which permits a trial judge to impose the death sentence on the basis of confidential information which is not disclosed to the defendant or his counsel." See also *Booth* v. *Maryland,* 482 U. S. 496, 506–507 (1987).

In light of the stark finality of the death sentence, the importance of procedural safeguards in capital sentencing proceedings cannot be overstated. "Because sentences of death are 'qualitatively different' from prison sentences, this Court has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." *Eddings* v. *Oklahoma,* 455 U. S. 104, 117–118 (1982) (citation omitted) (O'CONNOR, J., concurring), see also *Saffle* v. *Parks,* 494 U. S. 484, 492–493 (1990); *California* v. *Ramos,* 463 U. S. 992 (1983).

The State argues that no constitutional violation occurred in this case because Judge Chapman did not recall, at the time of the sentencing phase, that he had represented Robertson's mother 11 years before. I find it to be somewhat incredible that a competent and responsible attorney could forget, after only 11 years, a client whom he had represented over a 4-year period during acrimonious divorce litigation. Judge Chapman's failure to remember his representation of Robertson's mother is particularly implausible because she testified during the sentencing proceedings concerning the very acts of abuse that formed the basis of the motion for a temporary restraining order that Judge Chapman filed when he was her counsel.

Moreover, the fairness of these capital sentencing proceedings may reasonably be questioned regardless of whether Judge Chapman had independent recollection of his prior representation of Robertson's mother. California requires that a judge disqualify himself if "a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." Cal. Civ. Proc. Code Ann. § 170.1(a)(6)(C) (West Supp. 1990). See 28 U. S. C. § 455(a), which similarly proscribes the participation by a judge of the United States "in any proceeding in which his impartiality might reasonably be questioned." Knowledge of the disqualifying circumstance is not an element of either statute. See, *e. g., Liljeberg* v. *Health Services Acquisition Corp.,* 486 U. S. 847, 860–861 (1988), quoting 796 F. 2d 796, 802 (CA5 1986) ("'Under section 455(a) . . . recusal is required even when a judge

lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge'").

Finally, the Eighth Amendment safeguards the capital defendant against the mere risk that the death sentence will be imposed arbitrarily and capriciously. "A constant theme of our cases . . . has been emphasis on procedural protections that are intended to ensure that the death penalty will be imposed in a consistent, rational manner." *Barclay* v. *Florida*, 463 U. S. 939, 960 (1983) (STEVENS, J., concurring in judgment); see also *Godfrey* v. *Georgia*, 446 U. S. 420, 427 (1980) (plurality opinion) ("[T]he penalty of death may not be imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner").

Accordingly, I dissent from the denial of the petition for certiorari.