454

MILLIKEN & MICHAELS OF ARIZONA, INC. and TABJAA, Inc., dba Metropolitan Consumer Collection Services, Plaintiffs,

v.

Richard C. HOUSEWORTH, in his official capacity as Arizona State Banking Department Superintendent, Defendant.

Civil 96–0737 PHX EHC.

United States District Court, D. Arizona.

July 1, 1996.

As Amended July 15, 1996.

Joel Philip Hoxie, Peter M. Wittekind, Barbara J. Dawson, Snell & Wilmer LLP, Phoenix, AZ, David Isreal, Anthony Rollo, McGlinchey Stafford Lang, New Orleans, LA, for Milliken & Michaels of Arizona.

Anthony B. Ching, Solicitor General, Office of the Attorney General, Phoenix, AZ, for Richard C. Houseworth.

### ORDER

CARROLL, District Judge.

On March 26, 1996, Plaintiffs Milliken & Michaels of Arizona, Inc., and TABJAA, Inc. filed suit against Defendant Richard Houseworth in his official capacity as Arizona State Banking Department Superintendent, alleging deprivation of their constitutional right to due process. Before the Court for consideration are Plaintiffs' applications for a temporary restraining order and for a preliminary injunction, and Defendant's motion to dismiss.

Milliken & Michaels ("M & M") and TABJAA are collection agencies licensed by the Banking Department to do business in Arizona. In 1995, the Banking Department instituted administrative enforcement proceedings against M & M and TABJAA, alleging sufficient grounds existed for the companies' licenses to be revoked or suspended and civil monetary penalties ("CMPs") assessed.[1] The state administrative hearing began in December 1995. Over twenty-eight hearing days occurred before Plaintiffs filed this action.

M & M and TABJAA filed the present action to stay the state administrative proceeding. Plaintiffs allege that the Banking Department's enforcement proceedings violate due process because the Banking De-

1. Originally two actions were filed, one against each Plaintiff in this action. The actions were consolidated.

partment, Superintendent Houseworth, and other department employees have a financial interest in the outcome of the enforcement proceedings. The alleged financial interest stems from the fact that CMPs are deposited in a revolving fund the department uses to pay certain employees' salaries and other expenses. Due to this financial interest, Plaintiffs assert, the Superintendent cannot provide the fair and impartial hearing required by due process.

*Discussion:*

Generally federal courts must abstain from granting injunctive or declaratory relief that would interfere with pending state proceedings. *Hirsh v. Justices of Supreme Court of California,* 67 F.3d 708, 712 (9th Cir.1995) (citing *Younger v. Harris,* 401 U.S. 37, 40–41, 91 S.Ct. 746, 748–49, 27 L.Ed.2d 669 (1971)). *Younger* abstention applies to state administrative proceedings. *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986). Absent extraordinary circumstances, abstention is required if the following three requirements have been met: (1) state proceedings are ongoing; (2) state proceedings implicate important state interests; and (3) the litigant has an adequate opportunity to present federal claims in the state proceedings. *Hirsh,* 67 F.3d at 712.

It is uncontested that the first two abstention requirements have been met. Plaintiffs contend, however, that no adequate opportunity to present federal claims exists because Banking Department officials' financial interest causes bias, or, in the alternative, that the bias presents extraordinary circumstances such that abstention is inappropriate. *See Kenneally v. Lungren,* 967 F.2d 329, 333 (9th Cir.1992), *cert. denied,* 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993) (stating that there is no opportunity to litigate constitutional claims when a state tribunal has been found incompetent by reason of bias); *Hirsh,* 67 F.3d at 713 (holding that abstention is inappropriate in the extraordinary circumstance that the state tribunal is biased).

Plaintiffs must overcome the presumption that the Banking Department and its officials act with honesty and integrity. *Id.* Moreover, the Court will abstain unless the alleged financial interest is direct and substantial. *Id.* (citing *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 824–25, 106 S.Ct. 1580, 1586–87, 89 L.Ed.2d 823 (1986)).

Because bias in the state proceedings would preclude a fair hearing, the Court has allowed Plaintiff to offer extensive documents in support of its position. The Court also held an evidentiary hearing on May 21, 1996. The Court has considered the material presented and concludes Plaintiffs have not shown that the Banking Department or its employees are biased due to a financial interest in the proceedings.

The Banking Department operates under a mandate to generate revenue at a level ensuring that deposits to the state general fund equal or exceed expenditures from the state general fund. *See* 1995 Arizona Session Laws, First Special Session, Ch. 1, § 25. Plaintiffs assert that the Banking Department's mandate to be, in essence, self-funded places pressure on the Department to impose CMPs.

The record does not support Plaintiffs' position. As Defendant argues, money obtained from CMPs cannot be deposited into the general fund. Recovered CMPs must be deposited into the Banking Department revolving fund. A.R.S. § 6–135(B). Thus, CMPs cannot directly help the Banking Department to meet its mandate to self-fund or to be a net contributor to the general fund. Rather, the department generates the necessary revenue through (1) annual assessments on state-chartered financial institutions; (2) hourly examinations fees; (3) application, permit, license, and renewal fees; and (4) miscellaneous funds. Smith Aff. ¶ 4, Traveler Aff. ¶ 5, exhs. 1–2 of Defendant's Reply to Plaintiff's Response.

Plaintiffs acknowledge that CMPs cannot be deposited in the general fund. However, they argue that the revenue generated from CMPs pays certain Banking Department expenses, and thus other revenue can be deposited in the general fund.

Although CMPs are used to fund a portion of the Banking Department's activity, the percentage of Banking Department revenue

generated from CMPs is minuscule. Plaintiffs have supplied the Court with the Banking Department's statement of revenue and expenses for fiscal years 1990 through 1995. *See* financial statement, Plaintiffs' Response in Support of its Applications for Temporary Restraining Order and Preliminary Injunction, exh. 9. Revenue that can be deposited in the general fund is listed as "revenue" and CMPs are set forth on a separate line. Adding these two figures together provides total departmental revenue. CMPs constitute a minuscule percentage of the total departmental revenue: 3.9% in 1990, 2.7% in 1991, 3.4% in 1992, 5.1% in 1993, 5.5% in 1994, and 4.4% in 1995.

The minuscule percentage of total revenue generated from CMPs is so low as to preclude a finding that financial interest creates a departmental bias. The present case stands in sharp contrast to that in which a mayor who sat as a municipal judge violated due process. *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). In *Ward*, fines and fees imposed by the mayor constituted a major portion of the village income—ranging from a low of thirty-seven percent to a high of fifty-one percent each year for a five year period. *Id.* at 58, 93 S.Ct. at 82. The Supreme Court concluded that the mayor was not a disinterested and neutral fact-finder. *Id.* at 59, 93 S.Ct. at 82. Based on *Ward*, this Court cannot conclude bias exists in the present case when the percentage of total revenue generated from the CMPs is so low.

The conclusion of no bias is bolstered by the fact that the Banking Department consistently generates revenue for the general fund in excess of expenses payable from general fund appropriations. *See* Banking Department financial statement, Plaintiff's response, exh. 9. Although expenses exceeded revenue by $722,000 in 1990, during the following five years the excess revenue ranged from a minimum of $273,000 to a maximum of $1,093,000. *Id.* The excess revenue was contributed to the general fund. From 1991 through 1995, contributions to the general fund exceeded CMPs by a minimum of 280 percent and a maximum of 600 percent. Had CMPs been eliminated entirely, surplus general revenue was sufficient to repay the 1990 deficit and to pay for everything funded by the CMPs. In contrast, in *Ward*, the village of Monroeville indicated that loss of revenue from the mayor's court would cause major financial problems requiring increased taxation or curtailment of services essential to villagers' health, safety and welfare. 409 U.S. at 58–59 n. 1, 93 S.Ct. at 82 n. 1.

Plaintiffs urge the Court to focus on the ratio of CMPs to the surplus revenue contributed to the general fund. Such a comparison is meaningless. CMPs constituted a small portion of the total revenue that enabled the Banking Department to contribute to the general fund. Comparing only one revenue source, CMPs, to the general fund contribution places exaggerated emphasis on that revenue source.

Plaintiffs point out that a revenue shortfall in 1992 resulted in several layoffs. They argue that employees aware of past layoffs are likely to make sure that future revenue is adequate. The 1992 layoff actually supports the Court's conclusion that the Banking Department and its employees are not biased. The department has demonstrated a willingness to lay off employees when revenue falls short, rather than inappropriately assessing CMPs to generate the revenue necessary to retain employees.

Next Plaintiffs assert that bias exists because the CMPs fund three full time positions in the department and one-half of the salary of an assistant attorney general. *See* revolving fund budget documents, Plaintiffs' response in support of T.R.O. applications, exh. 14. Former Banking Department Superintendent Harold Feeney's testimony at the May 21st hearing indicates that the three full time positions are limited term positions held by examiners who know they are paid from the fund. Feeney's testimony as well as affidavits submitted by other Banking Department employees indicate that employees funded by the revolving fund could be transferred into examiner positions funded by general revenue, assuming positions were open and the employees were qualified for them. *See* Smith Aff. ¶ 10, Traveler Aff. ¶ 10. As discussed above, excess revenue

has been adequate to fund everything currently funded by CMPs.

Moreover, neither the examiners nor the attorney general adjudicate the administrative hearings. Thus, any bias of these individuals would not affect Plaintiffs' right to an impartial decision maker.

Plaintiffs also argue that bias exists because hearing officers, who are private attorneys contracting with the state, are paid from the revolving fund. Feeney's testimony indicates that hearing officers are paid from the revolving fund and Defendant acknowledges that this has been the procedure in the past. *See* Defendant's Reply to Plaintiffs' Response at 7 n. 3. Defendant asserts that the Banking Department has stopped paying hearing officers from the revolving fund because the revolving fund can be used only for investigating and prosecuting civil actions. *See* A.R.S. § 6–135(C). However, Defendant has submitted no affidavit or other evidence attesting to this change.

In the circumstances of the present case, payment of hearing officers from the revolving fund does not show bias. Feeney testified that the contract between the state and the attorney acting as a hearing officer does not identify the source of the officer's payment. Nor is the officer told he is paid from the revolving fund. Feeney also testified that, if the revolving fund contained insufficient funds to pay an hearing officer, the officer would be paid from general revenue. The Court finds this testimony to be credible. As discussed above, the excess revenue contributed to the general fund exceeds CMPs from 1991 through 1995. Had the revolving fund account been inadequate to pay hearing officers, the Banking Department had ample financial resources to pay hearing officers.

Plaintiffs' final response in this matter, which should have been labeled a reply, sets forth new allegations and arguments about the adequacy of the Superintendent's review of a hearing officer's decision. The new allegations are unrelated to Plaintiffs' original allegations that financial interest resulted in bias. Indeed, the new allegations do not involve bias of any kind. Furthermore, Plaintiffs do not cite one case in support of these new arguments. These allegations will not be considered.

Plaintiffs have not shown that financial interest on the part of the Banking Department or its employees results in bias. Therefore, the Court will abstain under the *Younger* doctrine and Defendant's motion to dismiss will be granted.

Accordingly,

**IT IS ORDERED** granting Defendant's motion to dismiss (dkt. # 8). Plaintiffs' applications for temporary restraining order and preliminary injunction are denied as moot. (Dkts. 3, 4).