**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Dennis GULLOTA, Appellant.**

Superior Court of Pennsylvania.

Argued June 16, 1998.

Filed Aug. 12, 1998.

Peter Rosalsky, Philadelphia, for appellant.

Thomas Dolgenos, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before CAVANAUGH, STEVENS, and HESTER, JJ.

HESTER, Senior Judge:

Dennis Gullota appeals from the May 29, 1997 judgment of sentence following his conviction of insurance fraud at a bench trial. The trial court imposed a suspended sentence and a $100.00 fine. Appellant now argues the Pennsylvania Insurance Fraud Statute, 18 Pa.C.S. § 4117, is unconstitutional. We affirm.

The record establishes the following. In 1995, the Pennsylvania Department of Transportation (PennDot) received a form MV–105 from appellant requesting registration for a 1984 Subaru. The form requires the owner of a motor vehicle to verify his address, insurance company, and policy number information to register his vehicle for the ensuing year. Appellant signed the MV–105 form signifying that the insurance and address information he provided for the vehicle was accurate. Imperial Auto Tags & Insurance mailed appellant's form to Harrisburg together with its check in payment of the registration fee and supplied appellant with a license tag.

Tammy Kohr, a PennDot employee, reviewed the information from appellant's MV–105 form and attempted to verify the insurance coverage with the insurance company he listed. Appellant had indicated he was insured under Reliance Insurance Company Policy No. 717–08–313, or 717–0803B (it was unclear from the handwriting whether the last number was a "3" or a "B"). It is not clear from the record how PennDot determined the information supplied by appellant was invalid. Following a request from the county district attorney, Reliance assigned Mr. Richard Raab, an employee with its special investigations unit, to investigate the circumstances surrounding these two policy numbers. Mr. Raab ordered a check of company records to be conducted on both policy numbers. He determined from company files that Reliance did not provide automobile insurance for appellant under either policy number.

In December, 1995, Detective John Haugh from the Pennsylvania Insurance Fraud Unit contacted appellant, who agreed to be interviewed at his father's home. During the interview conducted by Detective Haugh and a partner, appellant indicated an attractive woman at the Imperial Tag & Insurance Agency had written the data on the MV–105 form using information that he provided. He signed the form. Appellant admitted that he did not have insurance with Reliance Insurance Company or with any other insurance company at the time he signed the MV–105 form in order to obtain a car license.

Before trial, appellant moved to quash the information contending that 18 Pa.C.S. § 4117, the Pennsylvania Insurance Fraud Statute, and, in particular, § 4117(a)(1) and § 4117(b)(j) (setting forth the maximum possible civil penalties for a violation of the statute) are unconstitutional. The trial court denied appellant's motion to quash the information.

In his defense, appellant presented character evidence. His father also testified he overheard Detective Haugh's partner assure his son that no prosecution would result if his son cooperated and answered honestly. De-

tective Haugh testified he informed appellant he would not be arrested after the interview but denied giving specific assurances concerning future prosecution. Following trial, the court convicted appellant of insurance fraud. However, the court acquitted him of charges of tampering with public records and false swearing. This appeal followed.

The Pennsylvania Insurance Fraud Statute, 18 Pa.C.S.A. § 4117(b)(j), in pertinent part, provides:

> (1) If a person is found by court of competent jurisdiction, pursuant to a claim initiated by a prosecuting authority, to have violated any provision of this section, the person shall be subject to civil penalties of not more than $5,000 for the first violation, $10,000 for the second violation and $15,000 for each subsequent violation. The penalty shall be paid to the prosecuting authority to be used to defray the operating expenses of investigating and prosecuting insurance fraud. The court may also award court costs and reasonable attorney fees to the prosecuting authority.

■ Appellant asserts that the "prosecuting authority" herein is the Philadelphia County District Attorney's Office. The essence of appellant's claim is that penalties collected through prosecutions are paid into a state Insurance Fraud Prevention Trust Fund. This fund was created by legislation primarily as a vehicle to combat insurance fraud and operates from a yearly contribution assessment paid by insurance companies in proportion to their underwriting insurance premium business written in the Commonwealth. *See* 40 Pa.C.S. § 3701–303(c). The fund then provides block grants to assist local prosecutors to defray the expenses incurred to pursue insurance fraud prosecutions. Appellant claims this contribution of fines to the fund used to pay salaries and expenses for prosecutors biased prosecutors to pursue a conviction against him without fairly considering the nature of his offense and his circumstances. He contends such an incentive to prosecute him vigorously violates constitutional due process by undermining the duty of prosecutors as officers of the court to seek justice and not just convictions.

Appellant argues the constitutionality of such a funding program has not yet been addressed under the provisions of the Pennsylvania Constitution and is not precluded under federal constitutional law. Alleging his rights are co-extensive under both the federal and state constitutions, appellant asserts the rationale, but not the holding, of *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) ((some citations omitted)), supports his claim that this funding scheme violates his due process rights. In *Marshall,* 446 U.S. at 242, 100 S.Ct. at 1613 the United States Supreme Court stated:

> The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision making process. The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," *Joint Anti–Fascist Committee v. McGrath,* 341 U.S. 123, 172, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter J., concurring) by insuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.

Appellant then points to a trilogy of United States Supreme Court decisions in which the Court applied this constitutional principal of requiring a neutral tribunal to reverse criminal convictions. In *Connally v. Georgia,* 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977), the United States Supreme Court held that where a magistrate was paid five dollars to approve search warrants but nothing to disapprove them, this procedure violated the due process clause. In *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34

L.Ed.2d 267 (1972), the United States Supreme Court held that the use of a mayor as a part-time magistrate for traffic offenses violated due process since the mayor also helped direct city finances and expenditures derived, in part, from these same traffic violation fines and fees. Finally, in *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), the United States Supreme Court held that even though a petitioner was entitled to a *de novo* trial, this entitlement did not safeguard adequately his constitutional right to an impartial tribunal. The court indicated *Tumey* constitutionally was entitled to an impartial tribunal in the first instance.

Our standard of review for claims that a statute is unconstitutional is clear. In *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162, 165 (1996) (citation omitted), our Supreme Court indicated:

> [T]here is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. While penal statutes are to be strictly construed, the courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute. *Commonwealth v. Wooten*, 519 Pa. 45, 545 A.2d 876, 880 (1988). A statute, therefore, will only be found unconstitutional if it "clearly, palpably and plainly" violates the constitution. *Commonwealth v. Mikulan*, [504 Pa. 244, 470 A.2d 1339, 1340 (1983)].

We are not persuaded by appellant's argument. It is clear that he constitutionally is guaranteed a neutral judicial tribunal in the first instance. However, despite appellant's assertion that prosecutor's office receives significant funding derived from fines and fees paid for violations of this statute, a claim that the discretion exercised by the prosecutor is biased does not necessarily result in a biased tribunal. In *Concrete Pipe v. Construction Laborers Pension Trust*, 508 U.S. 602, 618, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993), the United States Supreme Court held: "Not all determinations affecting liability are adjudicative, and the 'rigid requirements' ... designed for officials performing judicial or quasi-judicial functions, are not applicable to those acting in a prosecutorial or plaintiff-

like capacity." Instantly, the decision to prosecute appellant does not involve any adjudication by a tribunal. Our review of the cases relied upon by appellant indicate that they all apply to officers in an adjudicative capacity and not to prosecutors. Accordingly, we find appellant's claim of a violation of constitutional due process rights due to taint resulting from the application of fines and fees from those convicted to help fund further prosecutions does not withstand review.

Further, as pointed out by the trial court, the Pennsylvania cases relied on by appellant are distinguishable. In *Commonwealth v. Eskridge*, 529 Pa. 387, 604 A.2d 700 (Pa. 1992), our Supreme Court granted a new trial where the prosecutor in *Eskridge* had an actual or direct conflict of interest. The prosecutor in that case represented the plaintiff injured as a result of the defendant's homicide by vehicle in a civil action. Thus, the prosecutor would benefit personally and perhaps, substantially in the civil action from a conviction in the criminal action. This is not the case here. The direct conflict of interest involving that particular prosecutor does not resemble the tangential relationship herein between fines and fees paid by this particular defendant and funds transferred to the local district attorney office by the Insurance Fraud Prevention Trust Fund. Moreover, any benefit to the individual district attorney's office was found to be slight since expenses and salaries are reimbursed, are insignificant in the overall budget, and no excess exists to be applied for other purposes.

■ Appellant secondly claims that the evidence was insufficient to support the verdict. Specifically, he contends that even though he admitted he supplied false information regarding his insurance coverage, his act is not the type that the legislature intended to be made a criminal act.

18 Pa.C.S. § 4117(a), in pertinent part, provides:

> **Offense defined.**—A person commits an offense if the person does any of the following:
>
> (1) Knowingly and with the intent to defraud a State or local government

agency files, presents or causes to be filed with or presented to the government agency a document that contains false, incomplete or misleading information concerning any fact or thing material to the agency's determination in approving or disapproving a motor vehicle insurance rate filing, a motor vehicle insurance transaction or other motor vehicle insurance action which is required or filed in response to an agency's request.

Appellant claims he did not make a false statement to an insurance company to an effort to make a false insurance loss claim or to a government agency. He insists his false statement did not lead PennDot to take any insurance action involving approval or disapproval of an insurance transaction such as a rate filing, a motor vehicle insurance transaction, or an insurance action determination by merely verifying his information. Thus, he contends the insurance fraud statute does not apply. He finally argues that where language in a penal statute is susceptible to more than one interpretation, both reasonable, concerning what acts that statute proscribes as criminal, it is required that strict construction must be given that operates in favor of the defendant's liberty. *Commonwealth v. Smith*, 333 Pa.Super. 155, 481 A.2d 1352 (1984).

We reject appellant's argument. He admitted making false statements to PennDot that he could have made only to induce it to grant him a registration sticker for his vehicle. The registration of his vehicle was premised on his representation that his vehicle currently was insured. If he had indicated his vehicle was not currently insured, PennDot would have rejected his registration. Verifying the information and granting a registration sticker we find to be an insurance action contemplated by the statute. In the event appellant's false information had not been detected and he injured someone on the public roads while driving, he might lack adequate funds to compensate them fully for their injuries. The false affirmation that he was insured could result in third parties such as insurance companies being required to make up for a shortfall caused by his deliber-

ate misrepresentation. We agree with the trial court that it "strains reason to suggest any purpose for the submission of false insurance information on an MV–105 other than to effect the agency's determination in approving or disapproving ... a motor vehicle [insurance] transaction." Trial court opinion, 1/15/98, at 8.

Judgment of sentence affirmed.