Ex Parte Chad Parker
















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-131-CR

EX PARTE CHAD PARKER

 

From the 13th District Court
Navarro County, Texas
Trial Court # 27,540
                                                                                                                
                                                                                                         
DISSENTING OPINION
                                                                                                                

      Today my brethren go outside of the appellate record to sustain a ruling in a bail-reduction
hearing, having been led into that error by the trial judge, who acted as an advocate on behalf
of the State when he introduced into the record an offense report that no party had offered or
suggested. Because the trial court’s decision regarding bail is not supported by the appellate
record, I dissent.
REVIEW STANDARD
      I agree that our review of a trial court’s decision in a bail-reduction hearing is under an
abuse of discretion standard. Ex parte McCullough, 993 S.W.2d 836, 837 (Tex. App.—Waco
1999, no pet.); Ex parte Emery, 970 S.W.2d 144, 145 (Tex. App.—Waco 1998, no pet.). The
burden is on the accused to show the bail amount to be excessive under article 17.15 of the
Code of Criminal Procedure. Id; see Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon Supp.
2000). Article 17.15 lists five factors to consider when determining if bail is excessive. They
are:
1) The bail shall be sufficiently high to give reasonable assurance that the undertaking will
be complied with. 
 
2) The power to require bail is not to be so used as to make it an instrument of oppression. 

3) The nature of the offense and the circumstances under which it was committed are to be
considered. 

      4) The ability to make bail is to be regarded, and proof may be taken upon this point. 
 
5) The future safety of a victim of the alleged offense and the community shall be
considered. 

Id. Family and community ties, length of residence in the county, prior criminal record,
conformity with conditions of previous bail bonds, and aggravating circumstances of the
offense should also be considered. Emery, 970 S.W.2d at 145 (citing Ex parte Rubac, 611
S.W.2d 848, 849-50 (Tex. Crim. App. [Panel Op.] 1981)).
DETERMINATION OF THE APPELLATE RECORD
      Parker presented evidence that relates to the first, second, and fourth factors listed above. 
The State presented neither witnesses nor documentary evidence.


 Thus, the record on appeal
should be limited to testimony presented by the defendant and the cross-examination of those
witnesses by the State. The judge, however, was apparently not content with the evidence he
had heard. After both parties rested and made brief statements by way of argument for their
respective positions, the following took place:
THE COURT: I have the benefit of considering some of the circumstances in this case
based on a companion case and a hearing that I just held with regard to that case in which
I’ve had an opportunity to consider the allegations contained in the offense reports,
etcetera. And although I’m aware that those are merely allegations at this point, I believe
after considering all the evidence I will reduce bail. That bail will be reduced to $50,000
in this case.

Thus, the judge summarily announced that he was considering an offense report as part of the
evidence. The offense report was not produced at the hearing; it was not marked as an exhibit; 
no copies were furnished to counsel;


 the document was not identified or sponsored as an
exhibit by a witness whom Parker’s counsel could cross-examine. In short, the trial judge’s
announcement gave counsel no opportunity to object.



      Courts have long been concerned when a trial judge abandons his neutral role. As early as
1912, the Court of Criminal Appeals, in reviewing a case in which the judge had examined the
witnesses, expressed this idea:
Now, in the examination of a witness, however fair-minded the judge may be, it would be
almost impossible for him to so conduct it as not to suggest in some measure that he is on
one side or the other. And, moreover, we have noticed that, when the court attempts to
thus usurp the functions of counsel, he is apt to ask questions that are leading in
character, and that are otherwise objectionable. By carefully attending to his own duties
and conserving his own functions, he will best be able to hold the scales of justice
impartially as between the counsel who are managing the case for and against the state;and, whenever he does interfere, it is generally at the expense of his own authority and
dignity, which should be rigidly guarded, in order that he may administer the law with
fairness and impartiality, and with that authority and power which pertains to the office.

Drake v. State, 65 Tex. Crim. 282, 143 S.W. 1157, 1160 (1912) (emphasis added).
      As the First Court of Appeals has observed:
One of the most fundamental components of a fair trial is "a neutral and detached
judge." Ward v. Village of Monroeville, 409 U.S. 57, 62, 93 S.Ct. 80, 84, 34 L.Ed.2d
267 (1972). A judge should be fair and impartial and not act as an advocate for any party. 
Delaporte v. Preston Square, Inc., 680 S.W.2d 561, 563 (Tex. App.—Dallas 1984, writ
ref'd n.r.e.). A judge should not be any party's adversary. Ex parte Finn, 615 S.W.2d
293, 296 (Tex. Civ. App.—Dallas 1981, no writ); see Delaporte, 680 S.W.2d at 563. 
The impartiality of the judge is not only a matter of constitutional law, but of public
policy, as well:
 
Public policy demands that a judge who tries a case act with absolute impartiality. It
further demands that a judge appear to be impartial so that no doubts or suspicions
exist as to the fairness or the integrity of the court. Judicial decisions rendered under
circumstances that suggest bias, prejudice or favoritism undermine the integrity of the
courts, breed skepticism and mistrust, and thwart the principles on which the judicial
system is based. 
 
CNA Ins. Co. v. Scheffey, 828 S.W.2d 785, 792 (Tex. App.—Texarkana 1992, writ
denied) (citations omitted).

Metzger v. Sebek, 892 S.W.2d 20, 37-38 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

      The Fourteenth Court of Appeals recently considered a case in which the trial judge
“clarified the record” with a lengthy statement in which she relied upon her recollection of the
events preceding appellant’s plea to refute much of the testimony of his trial counsel. George
v. State, 20 S.W.3d 130, 139 (Tex. App.—Houston [14th Dist.] 2000, no pet. h.). In
discussing the role of the trial judge, the majority said:
It is well-established that a trial judge may clarify the record when the spoken word
does not reflect the true trial proceedings, and explanations of this sort may be of
assistance to an appellate court. See Myers v. State, 781 S.W.2d 730, 733-34 (Tex.
App.—Fort Worth 1989, pet. ref'd). For example, when a witness points to or describes
the clothing of the defendant worn at trial, the judge may direct that the record reflect that
the witness identified the defendant. Id. See also Martinez v. State, 822 S.W.2d 276, 282
(Tex. App.—Corpus Christi 1991, no pet.) and Chase v. State, 750 S.W.2d 41, 43-44
(Tex. App.—Fort Worth 1988, pet. ref'd) (where trial judge clarified the record by
explaining that a child witness identified the vaginal area of an anatomically correct doll).
 
"Clarification" of the record is proper where the trial judge, acting as the "eyes" of
the appellate court, makes an explanation of some event or physical phenomenon
observable to those in the courtroom and about which there is no reasonable dispute. 
Here, the judge recited facts which were very much in dispute. In fact, she carefully
rebutted each allegation of impropriety made by appellant's trial counsel. Thus, we find
the comments at issue fall outside a proper "clarification" of the record.
 
Appellant contends trial judge's remarks are "testimony" and that by uttering such
remarks she made herself a witness in the case. By her own admission, the judge sought
to amplify the appellate record--something normally reserved only for witnesses. Further,
the burden of making a record to reveal or dispel error rests with the parties, not the
court. In her role as a fact-finder, the judge may consider her personal recollections of
prior testimony and events in the cause, but she must do so silently. Once the judge begins
assisting one side or the other in constructing a record, her position is altered from one of
being a neutral fact-finder to an adversary. "It is difficult to see how the neutral role of
the court could be more compromised, or more blurred with the prosecutor's role, than
when the judge serves as a witness for the state." Brown v. Lynaugh, 843 F.2d 849, 851
(5th Cir. 1988).
       
Id. at 139-40 (emphasis added). The dissenting Chief Justice went even further:
Not only did she testify, however. Her testimony was clearly adverse to appellant,
giving the judge the appearance of bias frowned on by the Constitution. Brown v.
Lynaugh, 843 F.2d 849, 851 (5th Cir. 1988) ("[I]t is difficult to see how the neutral role of
the court could be more compromised, or more blurred with the prosecutor's role, than
when the judge serves as a witness for the state."); Tyler [v. Swenson, 427 F.2d 412, 415
(8th Cir. 1970)] ("We think it runs against the grain of fairness to say that the same judge
may consider his own crucial testimony and recollection rebutting petitioner's claim and
simultaneously pass upon the credibility of all witnesses in weighing the evidence").

Id. at 143-44 (Murphy, C.J., dissenting). 
      Because the court, not one of the parties, inserted the offense report into the record, we
should not consider it. As the above cases indicate, it is improper for the trial judge to
introduce evidence designed to assist one party or the other or to bolster one side’s case. 
      Items not properly in the record cannot be considered on appeal. See Tex. R. App. P.
34.1, 34.5, 34.6 (contents of Appellate Record); see also Gabriel v. State, 973 S.W.2d 715,
719 (Tex. App.—Waco 1998, no pet.) (letter attached to appellate brief not part of the record);
Kaman v. State, 923 S.W.2d 129, 131 n.6, 132 (Tex. App.—Houston [1st Dist.] 1996, no
pet.) (purported indictment physically present in appellate transcript not considered); Atchison
v. Weingarten Realty Management Co., 916 S.W.2d 74, 76-77 (Tex. App.—Houston [1st 
Dist.] 1996, no writ) (motion for summary judgment physically present in the transcript as an
attachment to another document not considered). Thus, when evaluating the trial court’s
decision on Parker’s motion to reduce his bail, we should not consider the offense report as
part of the appellate record.
REVIEW OF THE APPELLATE RECORD
      Based on a review of the record properly before us, I would find that the court abused its
discretion in the way it resolved Parker’s complaint about the amount of his bail. In its
“Findings,” the court found that “The defendant apparently has no family ties which would
inhibit his departure from the community.” The record demonstrates otherwise. The
undisputed evidence shows that Parker lives with his step-grandmother, Rose Marie Sciortino,
and his mother, Darla Jean Myers, who is “very ill” and receives disability income. Although
they have lived in Navarro County only since August of 1999, Sciortino is employed as a
licensed vocational nurse at the Navarro Regional Hospital. Furthermore, Sciortino’s sister-in-law, Wilma Frank, lives in Corsicana, a “cousin Jody” lives in Navarro County, and an “aunt
Betty,” has lived in Navarro County for “a long time.” Sciortino said that she and the
members of Parker’s extended family would help assure that he complied with the conditions
of bail and that he “abides by my instructions and his mother’s.”
      Parker testified that he had less than $10 in his jail account, the clothes he had on, and a
few possessions in his cell. He said he understood that, if admitted to bail, he would be
required to remain in Navarro County and that he would make all appearances in court when
required. He admitted that he left the state after the date of the alleged offense and was in jail
in Louisiana on an unresolved DWI charge. He said that his only other involvement with the
law was a juvenile charge in Louisiana that was “dropped.” He admitted that he did not
appear for a polygraph examination he had agreed to, but said it was because he was told not
to undergo such an examination without his attorney being present. 
      Neither party introduced evidence relating to the circumstances under which the offense
was allegedly committed. The information relating to this factor was contained in the offense
report, which was not part of the record of the hearing and should not be considered on appeal. 
Thus, the record available for our review contains no evidence about the circumstances of the
alleged offense. 
      Sciortino presented uncontroverted testimony that the maximum bail amount which the
family could afford would be $10,000 - $15,000.
      The records contains no evidence that relates to the fifth factor, i.e., the future safety of
the victim and the community.
 

CONCLUSION
      In light of the uncontroverted testimony about Parker’s ability to make bail,


 the court’s
decision to reduce the amount of bail from $75,000 to $50,000 was tantamount to no reduction
at all. Considering the evidence properly in the record and considering the factors listed
above, I would find that the court’s decision is not supported by the record. Thus, I would
find that the court abused its discretion by failing to further reduce the amount of the bail. I
would sustain the point of error, set aside the order, and grant habeas corpus relief. 
 

                                                                       BILL VANCE
                                                                       Justice

Dissenting opinion delivered and filed August 9, 2000
Publish